**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sammy Lee WARD, Edward B. Prows,
a/k/a Teddy, Defendants-Appellants.**

No. 81–5773.

United States Court of Appeals,
Eleventh Circuit.

Feb. 3, 1983.

Joseph S. Conlin, Tallahassee, Fla. (Court-appointed), for Sammy Lee Ward.

Anthony Bajoczky, Tallahassee, Fla. (Court-appointed), for Prows.

David L. McGee, Asst. U.S. Atty., Tallahassee, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, HENDERSON and CLARK, Circuit Judges.

ALBERT J. HENDERSON, Circuit Judge:

This action originated with the indictment of fourteen defendants on various criminal charges stemming from a marijuana smuggling enterprise. In this appeal, we are called upon to review the convictions of two of those defendants, Sam Ward and Edward Prows.

As a part of an undercover investigation known as Operation Grouper, agents of the Drug Enforcement Administration (DEA) contacted Sam Ward in October, 1980. A confidential informant had apprised the officers of the defendants' need for assistance in unloading smuggled shipments of marijuana from a vessel waiting offshore. Ward hired the agents to transport an expected twenty-seven thousand pound load. The agreement called for the DEA officials to furnish vessels for moving the marijuana from a waiting ship, purportedly arriving from Colombia, to a dock facility in Panama City, Florida. Thereafter, Ward and some of his co-conspirators, including Edward Prows, met with the agents on several occasions to discuss the details of the planned off-load. For reasons still unclear, the expected shipment never arrived.

Several weeks later, Ward contacted the agents and informed them that his group again needed an off-load crew. In subsequent meetings, the officers learned that virtually the same group of conspirators were participating in this second operation. After discovering the offshore location of the anticipated ship, the DEA agents informed the Coast Guard of its whereabouts. An inspection of the vessel revealed approximately twenty thousand pounds of marijuana.

As a result of this seizure, Ward was indicted on four counts charging a conspiracy to possess marijuana with the intent to distribute (a violation of 21 U.S.C. §§ 841 and 846), aiding and abetting the possession of marijuana with the intent to distribute (18 U.S.C. § 2 and 21 U.S.C. § 841), an attempt to import marijuana (21 U.S.C. §§ 952 and 963), and interstate travel in aid of racketeering (18 U.S.C. § 1952). After a jury trial, he was found guilty on all four counts. Prows was indicted and convicted only on the conspiracy charge.

I.

On appeal, Prows assigns as error the district court's refusal to grant a severance, the admission of hearsay statements of his co-conspirators and insufficiency of the evidence. As a threshold matter, however, we are confronted with whether Prows' failure to file his notice of appeal within the time prescribed by Rule 4(b) of the Federal Rules of Appellate Procedure deprives this court of jurisdiction to entertain his substantive claims.

 The timely filing of a notice of appeal is a mandatory prerequisite to the exercise of appellate jurisdiction. *Meggett v. Wainwright,* 642 F.2d 95, 96 (5th Cir.) *cert. denied,* 454 U.S. 1090, 102 S.Ct. 653, 70 L.Ed.2d 628 (1981); *Sanchez v. Board of Regents of Texas Southern University,* 625 F.2d 521, 522 n. 1 (5th Cir.1980).[1] To perfect an appeal of a criminal conviction, the defendant must file a notice within ten days after the entry of the judgment. Fed. R.App.P. 4(b). The rule authorizes a thirty-day extension upon a finding by the district court that the failure to file during the original period resulted from "excusable neglect." In criminal cases, this court has customarily treated a late notice filed after the expiration of the ten-day period and before the lapse of forty days (ten plus thirty), as a motion for extension of time but a motion that properly should be decided by the district court. *See, e.g., United States v. Rothseiden,* 680 F.2d 96, 98 (11th Cir.1982); *United States v. Rhodes,* 579 F.2d 366, 367 (5th Cir.1978); *United States v. Guiterrez,* 556 F.2d 1217, 1218 (5th Cir. 1977); *c.f. Sanchez,* 625 F.2d at 523 (application for extension in civil appeal must be

---

1. The Eleventh Circuit has adopted as precedent the decisions of the Former Fifth Circuit announced before October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*).

made within original filing period); *see also Brooks v. Britton,* 669 F.2d 665 (11th Cir. 1982) (recognizing different treatment of civil and criminal appeals); *see generally* 9 J. Moore, *Moore's Federal Practice* ¶ 204.19 (2d ed. 1982). In such cases it is the practice of this court to remand to the district court for a determination whether excusable neglect justifies an extension. *See Rothseiden,* 680 F.2d at 98; *Rhodes,* 579 F.2d at 367; *Guiterrez,* 556 F.2d at 1218.

■ Here, we are faced with that situation. The judgment was entered on the court's docket on July 21, 1981. The district court clerk, pursuant to Fed.R.Crim.P. 32(a), filed a formal notice of appeal at the defendant's request on September 11, 1981. This lapse of time exceeds the forty day maximum period contemplated by Rule 4(b). We note, though, that Prows wrote a letter to the district court prior to that time in which he expressed an intent to appeal his conviction and requested the appointment of an attorney to represent him in those proceedings. Under a liberal reading of Fed.R.App.P. 3(c), which enumerates the substance of a notice of appeal, the letter satisfies the requirements of the Rule.[2]

■ Nevertheless, the proper characterization of the letter as a notice of appeal does not end the matter. The record does not disclose whether Prows filed the "notice" in a timely fashion. His letter was dated June 26, 1981, but was not stamped as received by the clerk of the district court until August 18, 1981. If the court received the letter anytime before ten days after the judgment, Prows fulfilled the dictates of Rule 4(b). If the August 18, 1981 stamp is accurate, the correspondence still arrived within the forty-day time period. Hence, the responsibility lies with the district court to ascertain whether there was excusable neglect to authorize an extension of time.[3] We therefore remand Prows' appeal to the district court for the limited purpose of making the necessary findings of fact. Pending that court's disposition, we retain jurisdiction of the case. *See, e.g., Meggett,* 642 F.2d at 97. If the district court either finds timely compliance with Rule 4(b) or grants an extension, the appeal may proceed without further briefing or argument. *See, e.g., United States v. Umfress,* 562 F.2d 359, 360 (5th Cir.1977).

## II.

Having filed a timely notice of appeal, Ward first contends that the conspiracy charge against him violated the double jeopardy clause of the fifth amendment. Additionally, he asserts that the conduct of the government agents was so "outrageous" as to offend the principles of due process. We disagree.

■ The double jeopardy claim grows out of Ward's earlier conviction on a federal indictment in the Southern District of Georgia.[4] Those drug charges also resulted

---

**2.** Rule 3(c) states that "[a]n appeal shall not be dismissed for informality of form or title of the notice of appeal." In the 1979 amendments to the rule which added that provision, the drafters explicitly cited with approval cases holding that "so long as the function of notice is met by the filing of a paper indicating an intention to appeal, the substance of the rule has been complied with." Fed.R.App.P. 3 advisory committee note; *see, e.g., Cobb v. Lewis,* 488 F.2d 41, 45 (5th Cir.1974); *see also United States v. Hoye,* 548 F.2d 1271, 1272 (6th Cir.1977). *See generally* 9 J. Moore, *Moore's Federal Practice* ¶ 203.09. (2d ed. 1982).

**3.** According to both the defendant and the government, the attorney representing Prows at the trial, who evidently had agreed to represent him on the appeal, became critically ill soon after the sentencing hearing. In the fol-

lowing weeks, Prows' mother apparently contacted the district court on several occasions to discuss the attorney's illness and her son's difficulty in seeking an appeal. Based on these unfortunate circumstances, the defendant asks the court to ignore the lateness of the filing and reach the merits of the case. Although we are tempted to accept this invitation, Rule 4(b) confers the power on the *district* court, not this court, to grant an extension upon a finding of excusable neglect. *See* Fed.R.App.P. 26(b); *United States v. Shillingford,* 568 F.2d 1106, 1107 (5th Cir.1978).

**4.** That indictment charged Ward with attempting to import marijuana (21 U.S.C. §§ 952, 963) (two counts), attempting to possess marijuana with the intent to distribute (21 U.S.C. §§ 841 and 846) (two counts), possessing marijuana with the intent to distribute (18 U.S.C. § 2 and

from the efforts of DEA agents involved in Operation Grouper. Almost all of the counts in that indictment clearly dealt with separate offenses, distinct both in time and in place from the transactions leading to the Florida conviction.[5] The defendant, however, urges that one of the Georgia charges did in fact impermissibly overlap with the Florida case. One count of the Georgia indictment charged him with the unlawful use of a telephone to facilitate a conspiracy to possess marijuana, with the intent to distribute, a violation of 21 U.S.C. § 843(b). Similarly, he was convicted in the Florida trial of conspiring to possess marijuana with the intent to distribute, in contravention of 21 U.S.C. §§ 841 and 846. Because of the similarity in time, the identity of the co-conspirators, the nature of the statutory offenses, the overt acts alleged, and place, Ward maintains that he was improperly convicted twice for the same conspiracy. See, e.g., United States v. Henry, 661 F.2d 894, 896 (5th Cir.1981), cert. denied, 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853 (1982); United States v. Marable, 578 F.2d 151, 154 (5th Cir.1978).

Even assuming that the two charges related to a single conspiracy, the successive prosecutions did not place Ward in double jeopardy. A single transaction can form the basis of separate offenses under different statutes. See, e.g., Albernaz v. United States, 450 U.S. 333, 344 n. 3, 101 S.Ct. 1137, 1145 n. 3, 67 L.Ed.2d 275, 285 (1981); United States v. Phillips, 664 F.2d 971, 1006 (5th Cir.1981), cert. denied, —— U.S. ——, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). In determining if two statutory offenses in fact constitute one under the double jeopardy clause, a court must decide "whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932); see also Brown v. Ohio, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194 (1977); United States v. Tammaro, 636 F.2d 100, 103 (5th Cir.1981). If such a distinction exists, simultaneous or successive prosecutions are authorized,[6] "notwithstanding a substantial overlap in the proof offered to establish the crimes." Ianelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616, 627 (1975); see also Andiarena v. Keohane, 691 F.2d 993, 995 (11th Cir.1982). The inquiry focuses on the elements of the crime charged, not on the evidence admitted at the trial. E.g., Brown, 432 U.S. at 166, 97 S.Ct. at 2226, 53 L.Ed.2d at 194.

The two charges demand proof of different facts, and therefore satisfy the Blockburger test. The facilitation count required the government to establish a (1) knowing or intentional (2) use of a telephone (3) to facilitate the commission of a drug offense. 21 U.S.C. § 843(b); see United States v. Barnes, 681 F.2d 717, 723 (11th Cir.1982); United States v. Rey, 641 F.2d 222, 224 n. 6 (5th Cir.), cert. denied, 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981). A prima facie case need not include proof that the defendant committed the underlying offense, in this case a conspiracy, only that the accused facilitated its commission. Rey, 641 F.2d at 227, n. 10. On the other hand, the conspiracy charge compelled a finding of an unlawful agreement. See, e.g., United States v. Tamargo, 672 F.2d 887, 889 (11th Cir.), cert. denied, —— U.S. ——, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982). Since the elements necessary for a conviction under § 843(b) did not entail membership in

---

21 U.S.C. § 841) (two counts), use of a telephone to facilitate an attempt to import and to possess with intent to distribute marijuana (21 U.S.C. § 843), and use of a telephone to facilitate a conspiracy to possess marijuana with the intent to distribute (21 U.S.C. § 843).

5. Ward's appeal of that conviction is currently pending in this court. United States v. Graziano, No. 81–7569 (11th Cir. filed July 8, 1981).

6. We note that the government's prosecution of the two charges in successive trials, rather than in a single proceeding, does not alter the double jeopardy analysis applicable to this case. Brown, 432 U.S. at 166, 97 S.Ct. at 2226, 53 L.Ed.2d at 194. Phillips, 664 F.2d at 1006. Because Ward was convicted in the first trial, he cannot invoke the collateral estoppel aspect of double jeopardy to prevent relitigation of factual issues necessarily decided in the initial proceeding. See, e.g., United States v. Brunk, 615 F.2d 210, 211 (5th Cir.1980).

the conspiracy, but merely facilitation of it, successive prosecutions under the two provisions did not contravene the fifth amendment protection. *Cf. United States v. Ramos,* 666 F.2d 469, 476 (11th Cir.1982) (facilitation of distribution and conspiracy to distribute constitute separate offenses); *see also United States v. Counter,* 661 F.2d 374, 377 (5th Cir.1981); *United States v. Thomas,* 586 F.2d 123, 131 (9th Cir.1978); *United States v. Rodriguez,* 546 F.2d 302, 307 (9th Cir.1976).

Ward next argues that the degree of the government's participation in the smuggling operation violates due process. Both the Supreme Court and this court have suggested that police may become involved in criminal activity to such an egregious extent that it renders the prosecution of the defendant fundamentally unfair and voids the resulting conviction. *United States v. Russell,* 411 U.S. 423, 431–432, 93 S.Ct. 1637, 1642–1643, 36 L.Ed.2d 366, 373 (1973); *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Gianni,* 678 F.2d 956, 959 (11th Cir.1982). In reviewing a so-called "overreaching" defense, we examine the totality of the circumstances, giving predominate consideration to no single factor. *E.g., Gianni,* 678 F.2d at 960. We are also guided by the fact that undercover infiltration of a criminal operation is a "recognized and permissible means of investigation." *Russell,* 411 U.S. at 432, 93 S.Ct. at 1643, 36 L.Ed.2d at 374; *United States v. Capo,* 693 F.2d 1330 (11th Cir.1982). Moreover, furnishing a suspect essential aid or services is not necessarily improper. *See Hampton,* 425 U.S. at 489, 96 S.Ct. at 1649, 48 L.Ed.2d at 498; *United States v. Gray,* 626 F.2d 494, 498–99 (5th Cir.1980), *cert. denied,* 450 U.S. 919, 101 S.Ct. 1367, 67 L.Ed.2d 346 (1981).

Against this background, the investigatory tactics utilized by the DEA agents fell well within the parameters of permissible police conduct. While the officers made the initial call to Ward, they did not instigate the smuggling enterprise; they merely offered assistance in transporting the marijuana to shore once it arrived from Colombia. *C.f. United States v. Twigg,* 588 F.2d 373 (3d Cir.1978) (government assembled and supervised drug laboratory); *Greene v. United States,* 454 F.2d 783 (9th Cir.1971) (government first provided raw material to make whiskey, then purchased finished product). Of greater significance, however, is the fact that after the original plan collapsed, Ward himself contacted the agents to enlist their help. He and his co-conspirators, without the government's aid or participation, obtained the marijuana in Colombia, coordinated its transportation to a point off the Florida coast, and arranged for its distribution upon arrival in this country. Under these circumstances, the government's minimal involvement in the off-loading aspect of the scheme falls far short of the outrageous conduct necessary to constitute a denial of due process. *Cf. Gianni,* 678 F.2d at 960 (initiating contact and supplying marijuana held permissible); *United States v. Nicoll,* 664 F.2d 1308, 1314–15 (5th Cir.) (Unit B) (initiation of contact with potential cocaine purchaser found proper), *cert. denied,* —— U.S. ——, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982); *United States v. Tobias,* 662 F.2d 381, 387 (5th Cir.1981) (soliciting purchasers, selling and shipping chemicals and advising defendant on manufacture of chemicals did not violate due process), *cert. denied,* —— U.S. ——, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982); *see also Gray,* 626 F.2d at 498–499; *United States v. Till,* 609 F.2d 228, 230 (5th Cir.); *cert. denied,* 445 U.S. 955, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980); *United States v. Thomas,* 567 F.2d 638, 642 (5th Cir.), *cert. denied,* 439 U.S. 822, 99 S.Ct. 90, 58 L.Ed.2d 114 (1978).

Accordingly, the conviction of Ward is AFFIRMED. For the reasons previously stated, the appeal of Prows is REMANDED to the district court for further proceedings consistent with this opinion.