**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Victor Guy JOHNSON, Defendant–**
**Appellant.**

**No. 99–30045.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 13, 1999.

Filed Oct. 28, 1999

Mark Bennett Weintraub, Assistant Federal Public Defender, Eugene, Oregon, for the defendant-appellant.

Jeffrey J. Kent, Assistant United States Attorney, Eugene, Oregon, for the plaintiff-appellee.

Before: ALDISERT,[1] KLEINFELD, and W. FLETCHER, Circuit Judges.

W. FLETCHER, Circuit Judge:

This case concerns the Interstate Agreement on Detainers ("IAD"), 18 U.S.C.App. 2, and what starts the clock running on a prisoner's demand for a speedy trial. Appellant Victor Guy Johnson was serving a term in a Washington state prison when the United States Attorney for Oregon filed a federal complaint against him for an unrelated crime. The U.S. Attorney had the U.S. Marshal's Service serve a detainer for Johnson on the Washington authorities. Johnson filled out the speedy trial demand form that the Marshal's Service served on him and gave it to the appropriate prison officials. The prison officials promptly sent the demand to the Marshal's Service. The Marshal's Service, however, never delivered it to the U.S. Attorney or to the district court. The district court held that since the Marshal's Service failed to forward the request to the U.S. Attorney, the 180-day speedy trial period under the IAD did not start to run. We hold that delivery to the U.S. Marshal's Service was, for purposes of the IAD, delivery to the U.S. Attorney. We also hold that delivery of a letter to the district court from the public defender seeking appointment to represent Johnson constituted delivery to the court. We therefore reverse and remand to the district court to vacate Johnson's conviction and dismiss the indictment.

## I. BACKGROUND

While Johnson was serving a sentence in a Washington state prison, the U.S. Attorney in Oregon filed a criminal complaint against him for an unrelated bank robbery. The complaint was filed on April 11, 1997, and a warrant was issued that day for Johnson's arrest. The U.S. Attorney, via the U.S. Marshal's Service, filed a detainer for Johnson at the Washington state prison where he was then incarcerated. On May 21, 1997, Johnson was served with the detainer and given notice of his rights under the IAD and the Speedy Trial Act. On the same day, he completed the form provided by the Marshal's Service to demand a speedy trial (Form USM–17) and presented it to the state correctional officers. The prison officials promptly sent the form to the Marshal's Service as the Form USM–17 directs.[2] That form was delivered to the Marshal's Service in Seattle on May 23, 1997. The Marshal's Service in Seattle forwarded the Form USM–17 to the Marshal's Service in Eugene, Oregon, on May 28, 1997. The Marshal's Service in Eugene put the form in a file and did nothing further.

On August 25, 1997, the Federal Public Defender's office wrote a letter to the district court in Oregon requesting appointment as counsel to represent Johnson in the federal case. As part of the heading, the letter identified the case as "United States v. Victor Guy Johnson/CR No. 97–2033M." The third sentence of the letter said, "He [Johnson] is currently serving a

---

1. Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

2. Form USM–17 says, at the bottom, "4. If the prisoner demands or does not demand a speedy trial at this time, please return both copies of this executed form with the receipted copies 2 and 3 of the Detainer to this office in the enclosed self-addressed envelope." It is unclear whether the "enclosed self-addressed envelope" was registered or certified mail. However, it is undisputed that the Marshal's Service received the Form USM–17 in a timely fashion.

sentence in the state of Washington and has made a request for a speedy trial on the above referenced charge."

Despite Johnson's and the Washington prison authorities' compliance with the instructions on Form USM–17, and despite the Marshal's Service's actual receipt of the Form USM–17 and the district court's receipt of the public defender's letter, Johnson did not get a speedy trial. He remained in Washington state prison until March 25, 1998, when he was sent to federal court in Washington pursuant to the detainer.[3] He was then arrested on the federal charge and removed to Oregon. On April 16, 1998, a federal grand jury in Oregon indicted him on the federal charge. On April 28, 1998, he made his first appearance in district court in Oregon where he pled not guilty.

On May 13, 1998, Johnson moved to dismiss the indictment for violation of his speedy trial rights under the IAD. The court denied his motion on July 9, 1998. Johnson was not actually brought to trial until September 11, 1998, at which time he changed his plea to guilty without waiving his right to appeal on the speedy trial issue. He was finally brought to trial 478 days after he demanded a speedy trial on the Form USM–17 and 382 days after the public defender informed the district court that Johnson had demanded a speedy trial.

## II. DISCUSSION

A. *Return of Form USM–17 to the Washington correctional authorities and the U.S. Marshal's Service*

The IAD requires the government to bring a prisoner to trial "within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice" of his demand for a speedy trial. 18 U.S.C.App. 2, § 2, Article III(a). A prisoner makes his IAD demand by giving

the notice "to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it ... to the appropriate prosecuting official and court ..." *Id.* at Article III(b).

■ When we first visited this issue, we held that a prisoner has complied with his obligation under the IAD by signing the Form USM–17 and giving it to the correctional officials. *U.S. v. Reed,* 910 F.2d 621, 625 (9th Cir.1990). However, since we decided *Reed,* the Supreme Court, in *Fex v. Michigan,* 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993), has held that the 180–day period does not start until the speedy trial request is actually delivered to the court and the prosecutor.

Johnson attempts to distinguish *Fex* by pointing out that the time lag in that case between delivery to the prison officials and delivery to the court and the prosecutor was only 11 days. *Fex,* according to Johnson, should not be read to apply to a case where the delay is so much greater. We find nothing in the language or logic of *Fex* that permits such a distinction. The IAD requires that the prisoner "have caused" "written notice" to be "delivered" to the prosecutor and the court. Under *Fex,* it does not matter what the prisoner may or may not have done in an attempt to cause such delivery or how much or little delay there is in the delivery. Until actual delivery occurred, the 180–day period did not start to run. Thus, in this case, it does not help Johnson that he might have promptly returned the Form USM–17 to the prison authorities as he was instructed by the statute to do. The question before us is what constitutes delivery to the U.S. Attorney and to the district court.

Johnson next argues that delivery to the Marshal's Service triggers the 180–day period since the Marshal's Service is part of the same federal sovereign as the U.S. Attorney and the U.S. District Court. This argument is not expressly foreclosed

---

**3.** Because of the detainer, Johnson was not allowed to complete his sentence at a mini-

mum security center or take work-release status.

by *Fex*, which involved the operation of the IAD between two state jurisdictions. We believe, however, that the "same sovereign" argument, without more, is not enough to compel the conclusion that delivery to the Marshal's Service is delivery to the prosecutor and the court.

### B. Delivery of "written notice" to the U.S. Attorney

■ In *U.S. v. Collins*, 90 F.3d 1420, 1426 (9th Cir.1996), the government agreed that delivery of a Form USM–17 to the U.S. Marshal constituted delivery to the U.S. Attorney for purposes of the IAD. However, the government is not willing to agree to that proposition in this case, arguing that such delivery "ignores the realities of separation and size." We do not find the government's argument convincing. The Marshal's Service is not some unrelated government entity with no connection to the U.S. Attorney or to this case. It is the very entity that the U.S. Attorney used as its agent to serve the detainer on Johnson.[4] The government cannot satisfy its obligation to lodge a detainer under the IAD by means of the Marshal's Service, instruct the prisoner to return the form enclosed with the detainer to the Marshal's Service, and then deny any connection when the Marshal's Service fails to alert the U.S. Attorney to the return of the form and the demand for a speedy trial.

The Form USM–17 expressly states that it should be returned to the U.S. Marshal's Service in Seattle. The warden did this, apparently precisely as instructed, and the Marshal's Service did, in fact, receive the form. If there was any problem with the instructions contained in Form USM–17, the U.S. Attorney knew or should have known of the problem. Indeed, in an unrelated case, the Second Circuit has expressly directed the U.S. Attorney's Office

to correct misleading aspects of the form. *U.S. v. Paredes–Batista*, 140 F.3d 367, 373 (2nd Cir.1998). Even though the Form USM–17 is a Marshal's Service form, it is the U.S. Attorney who is legally responsible for serving the detainer on the prisoner. *See* 18 U.S.C.App. 2, § 2, Article IV. Thus, any failure of ultimate delivery to the U.S. Attorney that resulted from compliance with the directions on the form is directly attributable to the U.S. Attorney.

The U.S. Attorney cannot both designate a manner for delivery and argue that delivery made in that manner is invalid.[5] If the U.S. Attorney does not want to rely on the Marshal's Service to handle the return of the speedy trial demand, it has an obvious remedy. Instead of asking the warden to mail the speedy trial request to the Marshal's Service, it could ask the warden to mail the request directly to the U.S. Attorney's Office. This would be both a simple and effective solution. Under the current system, the warden is already asked to mail the request; the only difference is that he would be asked to mail it directly to the U.S. Attorney rather than through an unnecessary and (at least in this case) unreliable intermediary. In the end, we believe that the U.S. Attorney must accept the consequences of the agent it uses for service, of the forms that its agent serves, and of the request it makes to the state correctional authorities. We hold that where, as here, the U.S. Attorney uses the Marshal's Service to serve a detainer and instructs that the return be made to the Marshal's Service, delivery of the speedy trial request to the Marshal's Service is delivery to the U.S. Attorney under the IAD.

### C. Delivery of "written notice" to the district court

■ In *Collins*, 90 F.3d at 1426, we held that delivery to the Marshal's Service

---

4. Under the IAD, it is the requesting prosecutor's duty to lodge the detainer. *See* 18 U.S.C.App. 2, § 2, Article IV. It is not an independent duty of the Marshal's Service.

5. This estoppel-based argument does not apply to notice to the district court. The court is in no way responsible for the actions of the U.S. Attorney and is entitled to separate notice under the IAD.

does not constitute delivery to the district court. Johnson must therefore rely on some other basis for delivery to the district court than delivery of the Form USM–17 to the Marshal's Service. Johnson contends that statutorily sufficient "written notice" was provided by the August 25, 1997, letter from the public defender to the district court. The IAD requires that the court be given notice "of the place of his imprisonment" and of "his request for a final disposition to be made of the indictment, information or complaint[.]" 18 U.S.C.App. 2, § 2, Article III(a). It is undisputed that the public defender's letter to the court contained the information required by the IAD to be conveyed to the district court, for the letter expressly stated that Johnson was serving a sentence in the state of Washington and that he requested a speedy trial.

The government attempts to dismiss this notice by claiming it is merely a "passing reference" "sandwiched" between other material. We do not believe this is an accurate characterization. The sentence providing the notice required by the IAD was the third sentence of a five-sentence letter. Indeed, the reference to a speedy trial demand was the justification for appointing counsel even though no proceedings were then pending. Any failure of the district court to note or understand this sentence cannot be imputed to Johnson.

We find a useful analogy in *U.S. v. Ward*, 696 F.2d 1315 (11th Cir.1983), in which the Eleventh Circuit dealt with a prisoner who did not file a timely formal notice of appeal but did send a letter to the district court revealing he wanted to appeal and requesting appointment of an attorney to assist him. The circuit court held that this letter was sufficient to satisfy the requirement of a notice of appeal. *Id.* at 1318.

We do not find it relevant that the information was not sent directly to the court by the warden of the prison. There is no suggestion in this case that there was ever any expectation or practice of sending the Form USM–17 directly to the court. The form itself instructed the warden to send it to the U.S. Attorney's office in the "enclosed self-addressed envelope." The Supervising Deputy Marshal in Eugene stated in his deposition that the standard practice, when the notification system was working properly, was for the U.S. Attorney to provide notice of the speedy trial request to the district court. We see no reason why notice from the U.S. Attorney should suffice under the IAD but notice from the public defender should not.[6]

### CONCLUSION

Because of the failure of the U.S. Attorney to try appellant Johnson within the 180–day speedy trial period, we hold that Johnson's conviction should be reversed and the indictment dismissed. We note, however, that the IAD allows the district court to dismiss an indictment without prejudice depending on the "seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on administration of the agreement on detainers and on the administration of justice." 18 U.S.C.App. 2, § 9(1). Indeed, the district court in its order rejecting Johnson's speedy trial challenge under the IAD stated that if it had sustained his challenge, it would have dismissed the indictment without prejudice. The parties both agreed at oral argument that the statute of limitations on the crime with which Johnson is charged has not run and therefore does not pose an obstacle to reindictment.

---

6. The government states that the letter was not served by certified mail. However, the duty to serve by certified mail is a duty of the prison officials, not Johnson. 18 U.S.C.App. 2, § 2, Article III(b); *see also Casper v. Ryan*,

822 F.2d 1283, 1293 (3rd Cir.1987) *cert. denied* 484 U.S. 1012, 108 S.Ct. 714, 98 L.Ed.2d 664 (1988) (failure to send request by certified mail irrelevant if the letter is actually received).

The decision of the district court is RE-VERSED, and the case is REMANDED to vacate the judgment and dismiss the indictment.

ALDISERT, Circuit Judge, concurring:

I join the majority opinion in all respects and offer these additional observations which I believe on remand are relevant to the authority of the district court to dismiss an indictment without prejudice. As the majority opinion indicates, among the factors to be considered are "the facts and circumstances of the case which led to the dismissal." 18 U.S.C.App. § 9(1).

The Federal Public Defender wrote a letter to the court on August 25, 1997, referencing "United States v. Victor Guy Johnson, CR No. 97–2033M," E.R. at 6, requesting appointment of counsel. In my view, the United States Attorney did not have to be notified of this request. But the Federal Public Defender went further. He notified the court that Johnson "ha[d] made a request for a speedy trial on the above referenced charge." *Id.* Although he copied his client on the letter, he did not copy the United States Attorney or otherwise notify him. In his failure to do so, that portion of the letter has the very real potential of constituting an ex parte communication to the court on a critical issue in this case-a practice condemned by Rule 3.5(b) of the Model Rules of Professional Conduct. Although I am not willing to suggest that counsel pushed the envelope quite that far, I do feel that it is most relevant to the question of indictment dismissal without prejudice, especially in view that apparently Johnson, himself, felt that his speedy trial constituted an important defense to the bank robbery charge. The district court has explained:

Defendant testified that he contacted the Federal Defender's Office in Oregon about one month after signing the USM17. Defendant estimated that he talked to the Federal Public Defender's Office about ten times during the 180 day demand period, and that he dis-

cussed the speedy trial demand with the Federal Public Defender.... Defendant testified that he "may" have told other individuals that he believed that he would beat the bank robbery charges on speedy trial grounds.

Dist. Ct. Op. at 4–5, E.R. at 22–23.

KLEINFELD, Circuit Judge, dissenting:

I respectfully dissent.

Johnson was charged federally with bank robbery while he was in prison on a state conviction for rape. The Marshal therefore sent a detainer to the state prison. The operative language in the detainer form (Form USM–16) says "When the subject is to be released from your custody, please notify this office at once so that we may assume custody if necessary." Johnson, as the majority opinion accurately explains, did what he was supposed to do to get his bank robbery proceedings started promptly. But the Marshal's office in Oregon mistakenly failed to forward his papers to the United States Attorney's office and to the United States District Court. Johnson's own lawyer, the Federal Defender, cured the Marshal's defect with respect to the district court, as the majority persuasively explains.

But no one ever sent any paper to the United States Attorney in Oregon showing that Johnson demanded a speedy trial. The statute says that the paper has to be delivered to that office for Johnson to benefit from the statutory time limit (dismissal of the charges if trial is late). The majority opinion holds that giving the form to the Marshal amounts to delivery to the United States Attorney. That holding has some appeal, because a man in prison, not free to walk down the street to the post office himself, ought to be able to count on a high government official like the U.S. Marshal to do what she is supposed to do with legal papers. On the other hand, there is some appeal to not giving "get out of jail free" cards to rapists and robbers when government officials make mistakes

in their paperwork. In this case, Johnson can probably be charged again, but in many detainer cases, the statute of limitations will bar reindictment if the Marshal fails to forward the papers. Congress has made the policy decision on which interest prevails—the government's, unless both the district court and the United States Attorney actually receive the papers—and the Supreme Court has interpreted the statute against the prisoner even when he has done all he is supposed to do, so we are not free to reinterpret it. The majority opinion has some appeal, because Johnson reasonably counted on the Marshal to do her duty and she let him down. It also has some good practical suggestions. But I do not think precedent allows us to reverse.

The statute says that the prisoner shall be tried within 180 days "after he shall have caused to be *delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice...."[1] The United States Supreme Court held in *Fex v. Michigan* that the "180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has **actually** been delivered to the court and prosecuting officer...."[2] In *Fex*, as in the case at bar, the prisoner had done what he was supposed to do, and the Court said of the delay "That result is bad,"[3] but "the IAD unquestionably requires *delivery*,"[4] the Court emphasizing delivery. There is no getting around that. No delivery to the United States Attorney, no dismissal of the charges.

1. 18 U.S.C.App. § 2, Art. III(a) (emphasis added).

2. *Fex v. Michigan*, 507 U.S. 43, 52, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993) (emphasis added).

3. *Id.* at 50, 113 S.Ct. 1085.

4. *Id.* at 50, 113 S.Ct. 1085 (emphasis in original).

The majority opinion holds that "delivery to the U.S. Marshal's Service was, for purposes of the IAD, delivery to the U.S. Attorney." Because the Supreme Court has emphasized "delivery" and used the adverb "actually" to modify "delivered," I do not think we are free to dilute the requirement of actual delivery by this legal fiction. In *United States v. Collins*,[5] the parties did not litigate whether service on the marshal sufficed for delivery to the prosecutor, but only whether it sufficed as delivery to the court. We held that it did not, because the statute and *Fex* require delivery to the court, and "the Marshals are not agents for the court for purposes of accepting every request they find thrust upon them."[6] Neither are they agents of the United States Attorney for purposes of accepting delivery.

In *United States v. Paredes–Batista*,[7] a case like *Collins* where the prisoner did all he was supposed to do but the marshal failed to send on the papers, the Second Circuit held that *Fex* required actual delivery to the court. The Second Circuit expressed its disapproval of the marshal's "flawed" procedures, but held that "these administrative failings did not entitle Batista to a dismissal."[8]

Thus, no authority supports the majority opinion. *Paredes–Batista* includes advice to the marshal's service on how to rewrite its form to tell the prisoner he is on his own and cannot count on the marshal (apparently that has been done), and suggests that some sort of estoppel might operate in the future if the form were not changed, but the majority opinion does not rely on failure to rewrite the form.

5. *United States v. Collins*, 90 F.3d 1420 (9th Cir.1996).

6. *Id.* at 1426.

7. *United States v. Paredes–Batista*, 140 F.3d 367 (2d Cir.1998).

8. *Id.* at 372.

The majority opinion's justification for treating delivery to the marshal as though it were actual delivery to the United States Attorney is that the United States Attorney used the marshal to serve the detainer and instructed that the return be made to the marshal. The conclusion does not follow. If John Doe uses a process server to sue Richard Roe in an auto accident case, that does not make the process server John Doe's agent for receipt of service if Richard Roe then sues John Doe. The hypothetical case is analogous; that the United States Attorney uses the marshal to serve a detainer does not make the marshal the United States Attorney's agent for receipt of service.

The return language to which the majority opinion alludes does not make the marshal the prosecutor's agent for receipt. It says "If the prisoner demands or does not demand a speedy trial at this time, please return both copies of this executed form with the receipted copies 2 and 3 of the Detainer to this office in the enclosed self-addressed envelope." The marshal did not do what the United States Attorney asked her to do, and the language plainly does not say that receipt by the marshal is good enough.

There is nothing about a United States Marshal's appointment and duties to suggest that she is an agent for receipt of service for the United States Attorney. A marshal has her own separate appointment and commission from the president.[9] The United States Attorney does not have authority to supervise the marshal; instead the director of the United States Marshal's Service in Washington, D.C. supervises the local marshal.[10] The marshal's "primary" role is to provide security for and enforce orders of federal courts.[11] Were her official duties enough to make her an agent for receipt of service, that "primary" role would make it much more plausible that

the marshal would be an agent for the district court than for any other agency, yet we have already held in *Collins* that she is not. The marshal also "shall execute all lawful writs, process and orders issued under the authority of the United States,"[12] which is probably the basis for her service of the detainer, but there is simply nothing in the statute that makes her an agent to *receive* service, notice or papers on behalf of the United States Attorney.

There is a practical reason why this distinction matters. Ordinarily in a federal courthouse, the district court has one office with a counter where the clerk receives papers, the United States Attorney another, and the United States Marshal a third. They are different physical spaces, different counters, different clerks, and different file cabinets. When a paper is delivered to one of these offices, the other two do not get it, and ordinarily have no notice of it unless the office to which it was delivered sends it to them. That is one of the practical results of separate presidential appointments, separate commissions, and separate supervision of employees. A United States Attorney could politely request the marshal in her district to please have her staff send the United States Attorney copies of prisoners' answers to notices of detainer (indeed, that is just what the "please return both copies ... in the enclosed self-addressed envelope" language does), but if she were to walk into a marshal's office and tell the personnel there how to process their papers, the marshal would probably point to her commission on the wall and tell the United States Attorney to supervise her own staff. The United States Attorney might, if she kept a good data base, notice that she had not received any papers back on a detainer, and have someone ask the marshal's office what had happened. But there is no way that papers delivered to another of-

**9.** 28 U.S.C. § 561(c).

**10.** 28 U.S.C. § 561(g).

**11.** 28 U.S.C. § 566(a).

**12.** 28 U.S.C. § 566(c).

fice, in someone else's file cabinet, subject to a staff she does not control, can be said to have been "actually" delivered to the United States Attorney. *Fex* says that the prisoner's request, to start the time period, must have "actually been delivered," and it was not, so we are required to affirm.