**UNITED STATES of America,**
**Plaintiff—Appellant,**

v.

**Daniel RODRIGUEZ–AGUILERA,**
**Defendant—Appellee.**

No. 02–10298.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 4, 2003.

Decided May 5, 2003.

Before: B. FLETCHER, KOZINSKI,
and TROTT, Circuit Judges.

MEMORANDUM *

The government appeals the district court's dismissal with prejudice of Defendant–Appellee Daniel Rodriguez–Aguilera's indictment based on a violation of his rights under the Interstate Agreement on Detainers ("IAD"), 18 U.S.C.App. 2 § 2. We have jurisdiction under 28 U.S.C. § 1291, and now reverse.

On June 8, 2001, a complaint was filed against Rodriguez–Aguilera in the Northern District of California, charging him with being found in the U.S. after deportation, a violation of 8 U.S.C. § 1326. At the time, Rodriguez–Aguilera was in custody on an unrelated matter in the California Correctional Center ("CCC") in Susanville, CA. On June 28, 2001, the U.S. Marshal for the Eastern District of California [1] sent a "USM–17," entitled "Detainer Against Sentenced Prisoner," to the CCC; the CCC acknowledged receipt no later than July 2, 2001.

Once the CCC received Rodriguez–Aguilera's USM–17, four things were supposed to happen. The prison officials were required to (1) read or show a paragraph

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Although Rodriguez–Aguilera was indicted in the Northern District of California, the detainer form was issued by the U.S. Marshal for the Eastern District of California, where Rodriguez–Aguilera was incarcerated.

to Rodriguez–Aguilera advising him of the existence of the detainer and his rights under the Interstate Agreement on Detainers Act ("IADA"),[2] (2) execute an acknowledgment stating that they had done so and provided Rodriguez–Aguilera with a copy of the USM–17, and (3) have Rodriguez–Aguilera execute an acknowledgment of his rights under the IADA and elect whether he wanted to exercise his right to a prompt trial. These three steps were all taken, and Rodriguez–Aguilera elected to exercise his rights under the IADA.

Once Rodriguez–Aguilera elected to exercise his rights, the fourth step was for CCC officials to: (a) acknowledge receipt of the detainer; (b) provide a copy of the detainer to Rodriguez–Aguilera; (c) return one copy of the detainer to the office that had sent it – i.e., the U.S. Marshal for the Eastern District of California; and (d) "forward the Detainer together with the Certificate of Inmate Status by registered or certified mail to the U.S. Attorney for the Northern District of California and the U.S. District Court for the Northern District of California."[3] The 180–day trial clock under the IADA begins running on the day the U.S. Attorney's office and the district court receive the prisoner's USM–17. *Fex v. Michigan,* 507 U.S. 43, 52, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993).

In Rodriguez–Aguilera's case, however, the prison failed to comply with step 4(d). CCC officials apparently sent copies of the executed USM–17, without certificates of inmate status and not by registered or certified mail, to the U.S. Marshals for the Eastern and Northern Districts of California; these were received on July 16 and 19, 2001, respectively. The U.S. Marshal for the Northern District then forwarded Rodriguez–Aguilera's USM–17 to the U.S. Attorney for the Northern District of California on July 19, 2001; it was received the same day. However, no copy of the USM–17 was ever sent to the district court, and Rodriguez–Aguilera appears to have made no inquiry as to the status of his request for a prompt trial.

Finally, on December 21, 2002, on motion of the government, the district court issued a writ of habeas corpus *ad prosequendum* for Rodriguez–Aguilera. Rodriguez–Aguilera appeared in district court on February 14, 2002, and, on March 27, 2002, a grand jury returned an indictment charging him with being found in the U.S. after deportation, a violation of 8 U.S.C. § 1326. On April 23, 2002, Rodriguez–Aguilera moved to dismiss the indictment on the grounds that the government had violated his rights under the IADA. The district court granted Rodriguez–Aguilera's motion, dismissing the indictment with prejudice on May 14, 2002.

The district court's dismissal of an indictment is reviewed de novo. *United States v. Lualemaga,* 280 F.3d 1260, 1263 (9th Cir.), *cert. denied,* 536 U.S. 949, 122 S.Ct. 2641, 153 L.Ed.2d 820 (2002). In *Fex,* the Supreme Court held that "the 180–day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him *has actually been delivered to the court and prosecuting officer* of the jurisdiction that lodged the detainer against him." *Id.* at 52 (emphasis added). This Court has further elaborated, *"Fex* instructs us that the IADA means what it says. And when it says that the prisoner must have his demand 'delivered to the

---

2. The United States became a party to the IAD in 1970 by enactment of the IADA, codified at 18 U.S.C.App. 2.

3. The instructions were thus clear and explicit that the form should be returned to the U.S. Attorney for the Northern District and to the District Court for the Northern District.

... appropriate court,' that is what it means." *United States v. Collins*, 90 F.3d 1420, 1426 (9th Cir.1996).

Viewed in light of the strict reading of IAD Article III(a) in *Fex* and *Collins*, Rodriguez–Aguilera's motion to dismiss fails for one simple reason: His USM–17 was never delivered to the district court. Moreover, the district court received notice that Rodriguez–Aguilera was invoking his prompt trial right, at the earliest, on December 21, 2001, when the government filed its petition for writ of habeas corpus *ad prosequendum*. Thus, even if one assumes that, under the "substantial compliance" doctrine, Rodriguez–Aguilera invoked his rights on that date, 180 days had not yet elapsed between his invocation of his speedy trial right and his trial when the district court dismissed his indictment on May 14, 2002. *Compare, e.g., United States v. Johnson*, 196 F.3d 1000, 1001–02 (9th Cir.1999) (holding that prisoner substantially complied with IAD Article III(a) when public defender notified the district court of prisoner's invocation of IAD rights more than 180 days before trial).

We abhor the sloppy procedures and failure of state and federal officials to protect the prisoner's rights in this case, but we have no choice but to hold that the district court erred in granting Rodriguez–Aguilera's motion to dismiss based on a violation of his IAD rights. The decision of the district court is hereby reversed, and the case remanded to the district court for proceedings consistent with this ruling.

REVERSED AND REMANDED.

Judge KOZINSKI concurs in the judgment.