**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44042**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2018 Opinion No. 7** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: February 23, 2018** |
| | ) | |
| v. | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **KYLE A. RICHARDSON,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jay P. Gaskill, District Judge.

Order denying motion to dismiss, <u>affirmed in part</u> and <u>case remanded</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant. Sally J. Cooley argued.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent. Russell J. Spencer argued.

---

HUSKEY, Judge

Kyle A. Richardson appeals from the district court's judgment of conviction for three counts of delivery of a controlled substance and order of restitution. He argues: (1) his speedy trial rights under the United States and the Idaho Constitutions were violated; (2) his speedy trial rights under Idaho Code Sections 19-106 and 19-3501 were violated; (3) the State failed to bring him to trial within 180 days as required by the Interstate Agreement on Detainers (IAD); (4) the district court violated Idaho Rule of Evidence 404(b) by admitting a statement from an officer at trial; and (5) part of the district court's order of restitution was not supported by substantial and competent evidence. The district court's order denying Richardson's motion to dismiss is affirmed in part, and the case is remanded.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

In September of 2011, Richardson sold a confidential informant methamphetamine in three controlled buys. The confidential informant paid Richardson in four installments. On January 4, 2012, Richardson was arrested and charged with three counts of delivery of methamphetamine in a criminal complaint; the State subsequently filed an information on February 22, 2012. Richardson pleaded not guilty to the charges and his trial was set for June 4, 2012. Following a hearing, the district court granted the State's motion for a continuance, resetting the trial for August 20, 2012. The district court subsequently vacated that trial date to permit the district court sufficient time to rule on various motions. The district court denied one of the motions--the State's motion to admit the transcript of the deceased confidential informant's preliminary hearing testimony. The State filed a permissive appeal and the Idaho Supreme Court reversed the district court's order. *State v. Richardson*, 156 Idaho 524, 328 P.3d 504 (2014). The remittitur was issued July 16, 2014. *Id.*

At a status hearing on July 24, 2014, the district court was informed that Richardson was in federal custody for an offense committed in Washington. On May 14, 2014, in the federal case, Richardson was sentenced to a five-year term of imprisonment, which he spent mostly in Indiana. As a result, Richardson did not appear at the July 24, 2014, hearing before the district court, and the court issued a bench warrant for Richardson's arrest. At that hearing, the State represented that it was defense counsel's responsibility to initiate Richardson's transport to Idaho to stand trial.

Richardson was served with the warrant on January 6, 2015. On February 2, 2015, the district court and the State received a pro se "Demand for Speedy Trial and Final Disposition," sent by Richardson while confined in Indiana. The demand was made pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, the Idaho Constitution, and the Idaho speedy trial statutes. The documents attached to the demand provided details concerning Richardson's federal case and sentence.

The district court held several status hearings to assess Richardson's return to Idaho to face his Idaho charges. During the course of the next six months, the State made various representations to the district court that it was arranging for Richardson's transport to Idaho. Ultimately, the State formally lodged a detainer against Richardson.

On June 25, 2015, the State told the district court that federal correctional officials had received all necessary documentation for Richardson's transport. On July 22, 2015, the district court and the State received documents from the correctional officials providing written notice of Richardson's incarceration in Indiana, a request for the final disposition of his Idaho charges, and a certificate. The certificate stated the terms of Richardson's federal sentence, his time served, the amount of good time he had earned, and his parole eligibility. Also included were necessary forms for the State to complete and return to the federal correctional officials. On July 30, 2015, the State informed the district court that it had not sent a required form to the federal correctional officials to secure Richardson's return, but that it was working on it.

Richardson filed a pro se motion to dismiss and for final disposition on August 14, 2015, arguing that his constitutional and statutory speedy trial rights had been violated and the State had not brought him to trial within the 180-day period required by the IAD. A hearing was held and the district court permitted defense counsel to brief Richardson's pro se motion. The district court set a new trial date of December 7, 2015. On October 2, 2015, the district court denied Richardson's motion to dismiss. The district court found that the State had not violated the 180-day IAD period because Richardson's February 2, 2015, speedy trial demand did not trigger the IAD timeline. Thus, according to the district court, the IAD was not triggered until June 24, 2015, when the State filed a detainer against Richardson. The district court did not address or rule on any of the other bases upon which Richardson argued his speedy trial rights were violated. Richardson was transported to Idaho on October 23, 2015.

Following the December 7, 2015, trial, the jury convicted Richardson of three counts of delivery of a controlled substance. For each count, Richardson was sentenced to a unified term of twelve years, with five years determinate. The district court ordered the three sentences to run concurrently with each other and with Richardson's federal sentence. Richardson, upon his motion, received credit for time served from the date he was transported to Idaho. The district court also ordered Richardson to pay $2,738.46 in restitution for the police department's investigation, controlled buy money, drug testing, and the expenses incurred by a lab analyst's expert testimony at trial.

Richardson timely appeals to this Court.

3

## II.

## ANALYSIS

Richardson asserts the district court erred when it denied his motion to dismiss. First, he argues his speedy trial rights under the United States and Idaho Constitutions were violated by multiple delays caused by the State. He argues those same delays caused a violation of his statutory speedy trial rights under I.C. §§ 19-106 and 19-3501. Richardson argues the State's failure to bring him to trial within 180 days as required by the IAD is another ground for dismissal. Aside from the State's delays, Richardson contends his convictions should be vacated because the district court violated I.R.E. 404(b) by admitting a statement from an officer at trial about Richardson's previous involvement in distributing controlled substances. Last, Richardson asserts the district court erred when it ordered restitution for unverified expenses of a lab analyst who testified at trial and for a sum of buy money for which no witness at the restitution hearing had first-hand knowledge.

Beyond Richardson's I.R.E. 404(b) and restitution arguments, this case concerns a single fact pattern's application to four distinct sources of speedy trial rights: the Sixth Amendment to the United States Constitution; art. I, § 13 of the Idaho Constitution; I.C. §§ 19-106 and 19-3501; and the Interstate Agreement on Detainers, codified at I.C. §§ 19-5001 to 19-5008. The speedy trial rights derived from these sources are not dependent upon one another. *Reed v. Farley*, 512 U.S. 339, 358 (1994) (declining to equate a violation of the IAD with a constitutional violation); *United States v. Black*, 609 F.2d 1330, 1334 (9th Cir. 1979) ("[t]he protections of the IAD are not founded on constitutional rights"); *State v. Knauff*, 115 Idaho 74, 75-76, 764 P.2d 441, 442-43 (Ct. App. 1988) (Section 19-3501 gives rise to a separate right supplemental to the constitutional speedy trial right guaranteed by the sixth amendment to the United States Constitution and by article I, section 13 of the Idaho Constitution. Idaho Code § 19-5001 provides for a similar distinct statutory right, this one dealing specifically with those parties subject to the Interstate Agreement on Detainers.). Finding a violation of any source of speedy trial rights here is sufficient to require a reversal.

In its order denying Richardson's motion to dismiss, the district court addressed only one source of Richardson's speedy trial rights, the IAD, and failed to address the others. In this, the district court erred. Although we affirm the district court's conclusion regarding Richardson's IAD argument below, we remand to the district court to address Richardson's statutory and

constitutional speedy trial arguments. Because the determination of the speedy trial issue may affect the evidentiary and restitution issue, we vacate the judgment of conviction and reverse the restitution order.

## A. The State Brought Richardson to Trial Within 180 Days as Required by the IAD

The IAD is a federal law subject to federal construction that has been adopted in Idaho. *New York v. Hill*, 528 U.S. 110, 111 (2000). "Whether the government or the prisoner have met the standards of the [IAD] is a mixed question of law and fact. Such questions are reviewed de novo." *United States v. Reed*, 910 F.2d 621, 624 (9th Cir. 1990) (abrogated on other grounds by *United States v. Johnson*, 196 F.3d 1000 (9th Cir. 1999)).

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219.

### 1. Absent interference from the State, defendants must strictly comply with the requirements of the IAD

The Interstate Agreement on Detainers, an interstate compact authorized by Congress and codified in Idaho at I.C. §§ 19-5001 to 19-5008 was created to "address concerns that untried charges pending in other jurisdictions and difficulties in securing a speedy trial 'produce uncertainties which obstruct programs of prisoner treatment and rehabilitation.'" *State v. Mangum*, 153 Idaho 705, 709, 291 P.3d 44, 48 (Ct. App. 2012) (quoting I.C. § 19-5001(a)). The IAD contains a provision that allows defendants detained in one jurisdiction to obtain a trial on pending charges in a second jurisdiction within 180 days, or the charges in the second jurisdiction must be dismissed with prejudice. However, in order for the IAD's 180-day limit to be triggered, three requirements must be met: (1) the prosecuting authority must place a detainer on the prisoner; (2) the prisoner must deliver written notice of the place of the prisoner's imprisonment and request for final disposition to the prisoner's custodial official; and (3) the custodial official must promptly forward three items to the prosecuting authority and the applicable district court: (A) the written notice of the prisoner's place of imprisonment; (B) the prisoner's request for final disposition; and (C) a certificate containing: (i) the term of

5

commitment under which the prisoner is being held; (ii) the time already served; (iii) the time remaining to be served on the sentence; (iv) the amount of good time earned; (v) the time of parole eligibility of the prisoner; and (vi) any decisions of the state parole agency relating to the prisoner. I.C. § 19-5001(c); *Mangum*, 153 Idaho at 709, 291 P.3d at 48.

This Court has determined that, generally, only strict compliance with these requirements triggers the 180-day IAD limit. *Mangum*, 153 Idaho at 713, 291 P.3d at 52. However, in *Mangum*, this Court left open the possibility that substantial compliance with the IAD's three requirements could trigger its 180-day limit where "intentional interference by State parties is shown." *Id.* Mangum, while held in federal custody in California, became aware of pending charges and an arrest warrant filed against him in Idaho. *Id.* at 707, 291 P.3d at 46. He began sending letters to Idaho prosecutors, the appropriate Idaho district court, and the California correctional officials, providing them with notice of his location, requesting transport to Idaho, and demanding final disposition of his Idaho charges pursuant to the IAD. *Id.*

After Mangum was sentenced in California on his federal charges, he continued to send letters to the Idaho prosecutors and district court, and requested transport to Idaho from the California correctional officials. *Id.* at 708, 291 P.3d at 47. The correctional officials told Mangum his request under the IAD "was premature because Idaho had not yet placed a detainer on him." Approximately two months later, the Idaho prosecutors lodged a detainer against Mangum. Approximately two months from that date, the California correctional officials forwarded Mangum's request, along with a certificate specifying required IAD information, to the Idaho prosecutors and the district court. Mangum was then transported to Idaho. However, his trial was not scheduled for almost a year after his initial letter to the Idaho prosecutors. A few months before the scheduled trial date, Mangum moved to dismiss his charges, arguing the Idaho prosecutors had failed to bring him to trial within 180 days of his request under the IAD. *Id.* The district court denied Mangum's motion, finding that the initial trial date would have been within the IAD time limit. *Id.* at 709, 291 P.3d at 48.

Mangum appealed and this Court affirmed the district court's decision. *Id.* at 715, 291 P.3d at 54. This Court held that inmates "must strictly comply with the request requirements of the IAD" in order to trigger its 180-day time limit. *Id.* Because some of Mangum's letters to the Idaho prosecutors were sent prior to the date of the detainer and were not forwarded to the Idaho prosecutors through the California correctional officials, the letters did not trigger the IAD's 180-

day time limit. *Id.* at 713, 291 P.3d at 52. Only Mangum's requests made to the California correctional officials after the detainer was lodged, which were then forwarded by the correctional officials to the appropriate Idaho prosecutors and district court, together with the certificate, strictly complied with the IAD. Thus, the 180-day time limit began when the Idaho prosecutors and district court received the forwarded documents. Therefore, the *Mangum* Court held that the original trial date fell within the 180-day period required by the IAD. *Id.*

The Court declined to adopt a system where a defendant's substantial compliance with the IAD's requirements would trigger the 180-day limit. The Court stated "an inmate who wishes to invoke the statute's dismissal provision must, at the very least, ensure the receiving State has been given all the information expressly listed in the statute, including a certificate of inmate status issued and forwarded by correctional officials of the sending State." *Id.* at 710, 291 P.3d at 49. Although Mangum's letters to the Idaho prosecutors included information that placed the prosecutors on actual notice of Mangum's status, the Court held the letters did not strictly comply with the IAD. *Id.* at 713, 291 P.3d at 52. The Court noted that only where "intentional interference by State parties is shown," could the letters' procedural errors be excused and deemed substantially compliant. *Id.* at 713, 291 P.3d at 52. This Court held there was "no indication [the trial] was intentionally or purposefully delayed by government officials to interfere with [Mangum's] rights under the IAD." Rather, there was only evidence of procedural confusion between the Idaho prosecutors and the California correctional officials and so the Court did not relax its standard to substantial compliance. *Id.*

### 2. Richardson did not strictly comply with the requirements of the IAD

The facts of Richardson's case are a clear match to the facts in *Mangum*. Like in *Mangum*, Richardson's February 2, 2015, demand to the Idaho prosecutors and the district court provided actual notice of Richardson's status in federal prison in Indiana. However, just as in *Mangum*, this demand was not accompanied by the appropriate certificate, was not forwarded by the Indiana correctional officials, and, as discussed below, was sent before the Idaho prosecutors lodged a detainer against Richardson. Thus, Richardson did not strictly comply with the requirements of the IAD. As a result, none of the three requirements of the IAD had been met, and February 2, 2015, cannot be the date the IAD's 180-day limit began to run.

To the contrary, Richardson argues that the bench warrant issued by the district court on July 24, 2014, is the equivalent of a detainer under the IAD, or, alternatively, that the bench

warrant in conjunction with the State's May 18, 2015, extradition request is the equivalent of a detainer under the IAD. Accepting either of these arguments does not solve Richardson's strict compliance problem. Whether a detainer became effective on July 24, 2014, May 18, 2015, or June 24, 2015 (as the district court concluded), does not change the conclusion because the date a detainer is filed is not the date on which the IAD's 180-day limit begins to run. The 180-day limit begins to run only when the prosecuting authority and the appropriate district court receive, forwarded from a correctional official: (1) written notice of the prisoner's place of imprisonment; (2) the prisoner's request for final disposition; and (3) a certificate containing the required information about the prisoner. I.C. § 19-5001(c)(1)-(2); *Fex v. Michigan*, 507 U.S. 43, 51 (1993); *Mangum*, 153 Idaho at 709, 291 P.3d at 48. Thus, no matter the effective date of detainer, the start of the 180-day limit remains the same, barring Richardson relief under the IAD.

In this case, on July 22, 2015, the Idaho prosecutors and the district court received written notice of Richardson's place of incarceration and Richardson's request for final disposition from the Indiana federal correctional officials. The prosecutors and district court also received a certificate detailing: (1) Richardson's underlying sentence; (2) the time he had already served; (3) the number of days that remained on his sentence; (4) the amount of good time he had earned; (5) his ineligibility for parole; and (6) notification that no decisions had been made by the parole agency. Thus, July 22, 2015, is the date that the IAD's 180-day clock began to tick. Because Richardson was brought to trial on December 7, 2015, with forty-one days remaining before the 180-day limit ran, there was no violation of his right under the IAD.

3. **Because the State did not intentionally interfere with Richardson's right under the IAD, his substantial compliance with the IAD is irrelevant**

The above conclusion would be different if this Court reviewed Richardson's actions under a substantial compliance standard. This is only merited if the State intentionally interfered with Richardson's right under the IAD. Richardson asserts the State intentionally interfered with his right under the IAD when it unnecessarily delayed lodging a detainer against Richardson and when it misinformed defense counsel and the district court that initiating Richardson's transport was defense counsel's responsibility. However, there is no evidence that these actions were the result of the State's efforts to intentionally deprive Richardson of his rights under the IAD. Rather, this delay and misrepresentation can be attributed to lack of attention to the case.

8

This conclusion comports with this Court's decision in *Mangum*. There, we determined that a period of delay resulting from procedural confusion between Idaho prosecutors and California correctional officials did not constitute intentional interference. *Mangum*, 153 Idaho at 713, 291 P.3d at 52. This Court determines the same in this case. The record shows that at least some portion of Richardson's transport delay was caused by the State's confusion about its responsibility to initiate Richardson's return to Idaho, the process of filing an effective detainer, and the process of completing the relevant paperwork pursuant to the IAD. The confusion however did not amount to intentional interference and this Court will not review Richardson's actions for substantial compliance with the IAD.[1] Therefore, we conclude Richardson did not sufficiently comply with the IAD in order to trigger its 180-day protection on February 2, 2015.

B.     **This Court Reserves Its Opinion Concerning Richardson's I.R.E. 404(b) and Restitution Arguments**

Upon remand, the district court may determine that Richardson's statutory or constitutional speedy trial rights were violated. If it does so, that conclusion will resolve Richardson's I.R.E. 404(b) and restitution arguments. Thus, this Court declines to address those issues in this appeal. If the district court determines that neither Richardson's statutory nor constitutional speedy trial rights were violated, and again denies Richardson's motion to dismiss, Richardson has preserved his I.R.E. 404(b) and restitution arguments and may renew those claims on a subsequent appeal.

### III.

### CONCLUSION

Richardson's speedy trial right under the IAD was not violated. On that sole issue, the district court's order denying Richardson's motion to dismiss is affirmed in part, and we remand for proceedings consistent with this opinion.

Chief Judge GRATTON and Judge LORELLO **CONCUR**.

---

[1]     Although we do not find intentional interference for purposes of the IAD analysis, the opinion should not be read to infer or imply how this Court would rule on the State's delays under a constitutional or statutory speedy trial violation analysis.