UNITED STATES of America

v.

John W. REED.

Crim. No. M–83–00476.

United States District Court, D. Maryland.

Sept. 12, 1985.

Catherine C. Blake, U.S. Atty. for the D. of Md., and Wendy Arnell, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Fred Warren Bennett, Federal Public Defender, and Stephen J. Cribari, Asst. Federal Public Defender, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

On December 2, 1983, John W. Reed was charged in a three count information with driving while intoxicated in violation of 18 U.S.C. § 7 and 36 C.F.R. § 50.28(c); reckless driving in violation of 18 U.S.C. § 7 and 36 C.F.R. § 50.32(a); and failure to drive in a single lane in violation of 18 U.S.C. § 7 and 36 C.F.R. § 50.32(j) (Paper No. 1). He subsequently pleaded not guilty to all counts and consented to trial before a United States magistrate.

On February 13, 1984, a jury trial began before Magistrate Clarence E. Goetz. After approximately one and a half days of

trial, the jury found the defendant not guilty of failing to drive in a single lane, but guilty of reckless driving. They were unable to agree on a verdict on the driving while intoxicated charge [hereinafter DWI]. By agreement of all parties, Magistrate Goetz discharged the jury (2 Tr. at 119).

The government elected to retry the defendant on the DWI charge. Prior to that scheduled trial, the defendant filed a motion to dismiss the DWI charge on the ground that retrial on that charge would subject him to double jeopardy (Paper No. 11).

On August 8, 1984, Magistrate Goetz denied the defendant's motion to dismiss and the instant appeal followed.

## I. *Statement of Facts*

On June 22, 1983, defendant visited Bowie Race Course ("Bowie"). While there, according to his testimony, he consumed a bowl of claim chowder and about one and one-half draft beers. (2 Tr. 14–15). After leaving Bowie, he drove his 1977 Plymouth home to Washington, D.C., via the Baltimore-Washington Parkway (2 Tr. 18–19). Officer David Kerr of the United States Park Police was assigned that day to radar traffic control on the Parkway. He testified that at about 5:30 p.m., he was patrolling the southbound lanes on the Parkway approximately one mile north of Interstate 95 (1 Tr. 53). He observed a blue 1977 Plymouth run off the pavement onto the grass median three times in the space of a mile (1 Tr. 53–54). Traffic was heavy at the time. Officer Kerr explained that the Plymouth would move over into the right lane as if it were trying to pass on the shoulder, then change back into the left lane, and come close enough to the cars in front of him that the driver had to put on his brakes (1 Tr. 53–54).

Officer Kerr stopped the Plymouth and identified the driver as the defendant, John Reed. Officer Kerr testified that while asking the defendant for his driver's license, he detected what he felt was the odor of alcohol (1 Tr. 55). Therefore, he asked the defendant to get out of his car and come to the rear of it to check the defendant's balance. He stated that defendant appeared unsteady, and that he immediately asked if he could go off the Parkway to urinate. Officer Kerr testified that as defendant began to walk down about a 55 degree embankment, he lost his balance and fell all the way down the hill, and that after he had finished urinating, that he fell down several times trying to get back up the hill (1 Tr. 55–56, 74–76).

Officer Kerr then testified that he administered a field sobriety test. He explained that he asked the defendant to recite the alphabet; that the defendant was unable to recite successfully beyond the letter H; that he asked the defendant to touch the tip of his nose with each index finger in turn; that the defendant was able to do so only with his left index finger; that he asked defendant to walk a straight line, heel-to-toe, and that defendant was unable to do so (1 Tr. 56–57). Officer Kerr concluded that the defendant was drunk and that his ability to drive was impaired. He placed the defendant under arrest and took him to the Greenbelt substation (1 Tr. 58–59).

On cross-examination, Officer Kerr testified that the defendant was polite and cooperative (1 Tr. 93). However, defense counsel was able to introduce certain prior inconsistent statements that Officer Kerr had made. While Officer Kerr testified that the odor of alcohol about defendant was strong, he admitted that he had indicated in his police report on this case that the odor was moderate (1 Tr. 70–71). While he testified that defendant's walk was unsteady, Officer Kerr admitted that, in his report, he had described defendant as staggering (1 Tr. 87). Officer Kerr also admitted that he was unfamiliar with the instructions for examination for the field sobriety report, that he had not tested defendant's ability to articulate certain suggested difficult phrases, that he had not administered certain suggested field tests, that he had not followed the specific instructions, and that he had altered or truncated other tests (1 Tr. 79–81). Officer Kerr further admitted that he had tested

some people who had been unable to walk a straight line, heel-to-toe, regardless of whether or not they were intoxicated (1 Tr. 82).

After defendant was arrested and taken to the Greenbelt substation, Officer Thomas Johann of the United States Park Police administered a breathalyzer test to defendant and determined that defendant's blood alcohol content level was 0.18 percent (1 Tr. 124–125). He estimated that a man of defendant's weight would have had to have consumed seven 12 ounce beers or seven ounces of alcohol, in a one hour period, to measure a blood alcohol content level of 0.18 percent within one hour (1 Tr. 135).

The defendant testified in his own behalf. He admitted that he had drunk one and a half draft beers, but he offered a different explanation for his driving. He stated that on his way home, he had turned on his car air conditioner because the day was so warm, but that, after a period of time, the air conditioner had begun to work improperly, and the car interior had begun to heat up. He leaned across the passenger seat to try to roll down the passenger side window far enough to allow air into the interior. As he did so, the car veered into the other lane. He said that he stopped trying to roll down the window until he had regained control of the car. He explained that he made this attempt three times until he successfully rolled down the window, and that each time, the car would veer into the other lane (2 Tr. 19–21).

The defendant stated that he suffered from a bleeding prostate gland, which caused him frequent urgency and irritation and was the reason that he asked Officer Kerr if he could go off the Parkway to urinate (2 Tr. 28). He denied that Officer Kerr had asked him to recite the alphabet, or walk a straight line, or touch his fingers to his nose either before the officer arrested him and put him into the patrol car, or at any subsequent time (2 Tr. 29).

## II. *Legal Analysis*

The defendant argues that the government's decision to retry him on the DWI charge subjects him to double jeopardy in violation of the Fifth Amendment. He bases this argument on the theory of implied acquittal. Specifically, he contends that the government's rebuttal argument converted the reckless driving charge into a lesser included offense of the DWI charge. Therefore, he argues, when the jury returned a guilty verdict on the reckless driving charge and failed to reach a verdict on the DWI charge, it impliedly acquitted him of the DWI charge.

There are two questions for consideration before deciding whether to grant defendant's motion to dismiss. First, the court must consider whether the government's rebuttal argument can convert the separate offense of reckless driving into a lesser included offense of the separate charge of DWI. Second, the court must consider whether the jury's guilty verdict on the reckless driving charge, taken together with its failure to reach a verdict on the DWI charge, is an implied acquittal on the DWI charge.

The Double Jeopardy Clause forbids multiple prosecution for the same offense. *See, e.g., North Carolina v. Pearce,* 395 U.S. 711, 717–18, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969); *United States v. Benz,* 282 U.S. 304, 307–08, 51 S.Ct. 113, 114, 75 L.Ed. 354 (1931). To determine whether two offenses are the same for double jeopardy purposes the basic test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) is applicable. The *Blockburger* rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied, to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Id.* at 304, 52 S.Ct. at 182.

Thus, the *Blockburger* rule is one of statutory construction, in which the court must determine the legislative purpose underlying the statute. *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981); *see also Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct.

673, 74 L.Ed.2d 535 (1983). Furthermore, while the test is satisfied only if each offense requires proof of elements not required by the other offense, *see, e.g., United States v. Merchant*, 731 F.2d 186, 190 (4th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 153, 83 L.Ed.2d 91 (1984), the test may also be satisfied "notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616 (1975). *See also United States v. Bennett*, 702 F.2d 833, 835 (9th Cir.1983); *United States v. Ward*, 696 F.2d 1315, 1319 (11th Cir.), *cert. denied*, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983); *United States v. Neal*, 692 F.2d 1296, 1306 (10th Cir.1982); *Andiarena v. Keohane*, 691 F.2d 993, 995 (11th Cir.1982).

The laws at issue here are those promulgated by regulation to apply in special territorial jurisdictions of the United States as defined in 18 U.S.C. § 7. They are 36 C.F.R. § 50.32(a) which states:

"Reckless driving; prohibited operations.

Persons operating motor vehicles within areas covered by this part shall drive in a safe manner. The following are prohibited:

(a) Driving carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property ..."

and 36 C.F.R. § 50.28(c) which states:

"Use of liquors; intoxication.

(c) Driving motor vehicle while intoxicated.

No person who is under the influence of intoxicating liquor or narcotic drugs shall operate or drive a motor vehicle of any kind in any area covered by this part."

As is apparent, the reckless driving charge requires proof that the defendant drove carelessly and heedlessly in willful or wanton disregard of the rights or safety of others, or that he drove without due cau-tion or circumspection, at a speed or in a manner so that he endangered or was likely to endanger other persons or property. The DWI charge requires proof that the defendant drove his car while he was under the influence of intoxicating liquor. It is clear from comparing the two regulations that proof of a DWI charge does not always entail proof of reckless driving. Nor, of course, does reckless driving require proof of intoxication. Each regulation requires proof of a fact which the other does not.

Defendant argues, however, that while reckless driving is not normally a lesser included offense under DWI, it was made so in this case by the government's rebuttal argument.

In closing argument defense counsel had argued that the government has failed to produce any evidence to show that the defendant's conduct was in willful or wanton disregard of the rights or safety of others. Therefore, the reckless driving charge had not been proven.

In rebuttal, the government argued:

"Now with reference to the driving recklessly, Mr. Reed pointed out that there is no evidence that the defendant was driving in a willful and wanton disregard of the rights of others. Well Magistrate Goetz is going to tell you that willful means voluntarily and intentionally and with specific intent to do something the law forbids. And we would submit that if you're driving while under the influence of alcohol or while you're intoxicated, if you have voluntarily taken a glass filled with alcohol and put it to your lips and you have swallowed it, that that's voluntary. And if you get in an automobile and you start it and you drive down 95, that that's intentional. And I think that it's clear to all of us that, most of us, and I can't see any reason why we should assume that Mr. Reed didn't know, that driving while you are intoxicated or under the influence of alcohol is in violation of the law. Or he was doing something, he intended to do something that he knew that the law forbids. And

Magistrate Goetz is also going to instruct you that wanton means and careless or reckless disregard or indifference to the rights of one or more person. And I think we can also assume that if you are driving while you're drunk and you're driving at the tailend of rush hour on a heavily traveled or moderately traveled freeway and you realize that you have had something to drink, that you are not considering the rights of other individuals. You're indifferent to the rights of other individuals. What you're concerned about is your convenience or your need to get where you're going and you get behind the wheel. I don't think there's anything that has been inconsistent with the finding that he was indifferent to the rights of others or that he was in careless or reckless disregard if he got behind the wheel of his automobile when his blood alcohol content level was .18."

2 Tr. at 86–87.

In essence, the defendant argues on this appeal that the government, in order to sustain its reckless driving charge, relied on evidence of intoxication. Thus, the government's theory, according to the defendant, was that reckless driving is a lesser included offense in the DWI charge.

■ Some courts have held that, in determining whether a defendant will be subjected to double jeopardy, one must examine, not only the statutes involved, but also the offenses as charged in the indictment and the evidence and procedures at trial, see United States v. Sampol, 636 F.2d 621, 652 (D.C.Cir.1980); United States v. Pino, 606 F.2d 908, 915–16 (10th Cir.1979). That approach, however, in light of Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), appears untenable.

In Albernaz, the defendant received consecutive sentences for related charges of conspiracy to import marijuana and conspiracy to distribute marijuana. The conspiracy was the same. The only issue before the court was whether the two statutes, distinguished only by their purposes, constituted the "same offense." The court articulated the Blockburger rule as one of

statutory construction, which serves as a means of discerning congressional purpose. Id. at 340, 101 S.Ct. at 1143. See United States v. Bridges, 717 F.2d 1444 (D.C.Cir. 1983), cert. denied, —— U.S. ——, 104 S.Ct. 1310, 79 L.Ed.2d 708 (1984). The District of Columbia Circuit, the same court that decided Sampol, stated:

"Albernaz sheds new light on Sampol, and effectively overrules it. The lodestar must be the intent of Congress. The court's application of Blockburger must look to what Congress has said; the court's application of Congress' intent ought not be led astray by the happenstance of what evidence comes before the court.

The Court's approach in Albernaz also makes solid common sense. In applying the Blockburger test to statutes, the court performs an objective and easily policed function; it simply compares the terms of the relevant statutory provisions. The congressionally established scheme of punishment is not subject to disruption by an overreaching court. The court, in keeping with its place in the balance of powers, merely applies such penalties as Congress has prescribed.

The Sampol approach, by contrast, requires the court to pursue a more treacherous and intrusive course of action. The Sampol approach artificially focuses the court's attention on that portion of the evidence that supports both convictions. First, the court must scrutinize only the shared evidence to see if it alone could have supported both convictions. The court must undertake this invasion of the jury's province even where no objection to the sufficiency of the evidence could be made where all the evidence was considered. Second, if it finds that the shared evidence alone could support both convictions, the court must take the paradoxical step of discarding one of the penalties—no matter how heinous and analytically dissimilar the crimes may be, no matter that in fact the jury's determination may not have rested on the shared evidence. The court must

perform all these tasks without regard to the presumptive congressional intent to punish twice those who break the law twice."

*Id.* at 1450–1457. *See also United States v. Sinito,* 723 F.2d 1250, 1262 (6th Cir.1983) *reh'g en banc denied* (1984) (determining whether RICO is lesser included offense of continuing criminal enterprise, court must compare elements of offenses in abstract rather than looking to facts of any specific case); *Virgin Islands v. Smith,* 558 F.2d 691, 696 (3d Cir.) (determining whether possession of dangerous weapon is lesser included offense of second degree murder requires court to focus evidence necessary to prove statutory elements, not evidence adduced at trial), *cert. denied* 434 U.S. 957, 98 S.Ct. 486, 54 L.Ed.2d 316 (1977).

■ Thus, it appears that the *Blockburger* rule requires a court, considering whether two offenses are the same for double jeopardy purposes, to focus exclusively on the legislative purpose as articulated in the statutory elements of each offense. As noted earlier, the reckless driving and DWI offenses are separate offenses, with separate penalty provisions, articulated in distinct subparts of the Code of Federal Regulations. Each act is individually proscribed. Each offense requires proof of statutory elements which the other does not. Therefore, the two offenses are not the "same" under *Blockburger.*

■ The fact that the jury *might* have considered evidence of defendant's driving while in an intoxicated state as evidence that he drove carelessly and heedlessly, is irrelevant. The jury might also have considered evidence that defendant was speeding, changing lanes, and tailgating, as proof that he drove recklessly. For purposes of determining whether reckless driving is a lesser included offense of DWI, the court must focus solely on the fact that each of these offenses requires proof of a fact which the other does not. Evidence that the jury considered is irrelevant to this consideration.

The defendant also argues that on retrial the government will use evidence supporting the reckless driving charge, of which the defendant has been convicted, to prove the DWI charge. This he argues violates double jeopardy principles set forth in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

In *Vitale,* the defendant was tried and convicted of failing to reduce the speed of his car to avoid colliding with a person. The State of Illinois subsequently charged Vitale with two counts of involuntary manslaughter. *Id.* at 411–13, 100 S.Ct. at 2262–63. Vitale claimed double jeopardy barred a second trial.

Justice White stated for the majority: "The point is that if manslaughter by automobile does not *always* entail proof of a failure to slow, then the two offenses are not the 'same' under the *Blockburger* test. The *mere possibility* that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of its manslaughter case would not be sufficient to bar later prosecution." Id. at 419, 100 S.Ct. at 2266 (emphasis supplied). He noted, however, that if *in fact* the State found it necessary at the manslaughter trial to rely on conduct involving the failure to slow to prove the manslaughter charge, "because Vitale has already been convicted for conduct that is a necessary element of the more serious crime ... his claim of double jeopardy would be substantial." *Id.* at 420, 100 S.Ct. at 2267.

■ In the case at bar, there exists a possibility that the government will attempt to use reckless driving conduct to prove the DWI charge. As discussed previously, however, a driving while intoxicated offense does not require proof of recklessness. Even if an intoxicated person drives his car with utmost care, he can be charged with driving while intoxicated. It is the intoxication, not any outwards sign of recklessness, which is the offense.

■ As *Vitale* established, the mere possibility that the government will use reckless driving evidence to prove the DWI

offense is not sufficient ground to bar that prosecution. Consequently, the defendant's first argument, that reckless driving was made a lesser included offense of DWI, must fail.

The defendant also argued that the jury's guilty verdict on the reckless driving charge, together with its failure to reach a verdict on the DWI charge, is an implied acquittal on the latter charge.

■ In *United States v. Perez*, 9 Wheat. 579, 6 L.Ed. 165 (1824), the Supreme Court (Story, J.) articulated the rule that the failure of the jury to agree on a verdict was an instance of "manifest necessity" that permitted the trial court to terminate the first trial and retry the defendant. Otherwise, "the ends of public justice would ... be defeated." *Id.* 9 Wheat at 580. Since that time, the Court has consistently adhered to the rule that retrial following a "hung jury" does not violate the double jeopardy clause, *see, e.g., United States v. Sanford,* 429 U.S. 14, 16, 97 S.Ct. 20, 21, 50 L.Ed.2d 17 (1976). A trial court's declaration of a mistrial following a "hung jury" does not terminate the original jeopardy to which the defendant had been subjected. *See Richardson v. United States,* —— U.S. ——, ——, 104 S.Ct. 3081, 3086, 82 L.Ed.2d 242 (1984).

In support of his argument that the mistrial declared by Magistrate Goetz was not a mistrial, but was an implied acquittal on the DWI charge, thus barring retrial, defendant relies upon *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957), and *Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970).

At Green's first trial, the court instructed the jury that it could find him guilty of *either* first degree murder (killing while perpetrating a felony, arson) *or, alternatively,* of second degree murder (killing with malice aforethought). The jury found him guilty of second degree murder, but was silent as to any verdict on the first degree murder charge. On appeal, his conviction was reversed and the case remanded for a new trial. At this new trial, Green was tried again, not for second degree murder, but for first degree murder, and was convicted. The Supreme Court reversed, saying:

"Green was in direct peril of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. *When given the choice between finding him guilty of either first or second degree murder it chose the later.* In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder. But the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense."

355 U.S. at 190–91, 78 S.Ct. at 225–26 (emphasis added).

In *Price,* the situation was much the same. There, Price was charged with murder, and the jury returned a verdict of guilty *to the lesser included offense* of voluntary manslaughter. The verdict made no reference to the charge of murder. The appellate court reversed the conviction and remanded for a new trial. At the second trial, Price again was tried for murder under the original indictment, and the jury again convicted him of voluntary manslaughter. The Supreme Court again reversed:

"[T]his Court has consistently refused to rule that jeopardy for an offense continues after an acquittal, *whether that acquittal is express or implied by a conviction on a lesser included offense when the jury was given a full opportunity to return a verdict on the greater charge.* There is no relevant factual distinction between this case and *Green v. United States.* Although the petitioner was not convicted of the greater charge on retrial, whereas Green was, the risk of conviction on the greater charge was the same in both cases, and the Double Jeopardy Clause of the Fifth Amendment is written in terms of potential or risk of trial and conviction, not punishment."

398 U.S. at 329, 90 S.Ct. at 1761 (emphasis added).

Thus, an implied acquittal barring reprosecution must necessarily entail a determination that one of the offenses charged was the lesser included offense of the other. Only where the jury is given the full opportunity to return a verdict *either* on the greater *or, alternatively,* on the lesser included offense does the doctrine of implied acquittal obtain. Defendant admits as much in his Memorandum in Support of his Motion to Dismiss (Paper No. 11, at 6–7).

However, as noted earlier, reckless driving is not a lesser included offense of DWI, so that the jury was given the full opportunity not to return a verdict on either the greater or the lesser charge, but instead, to reach a verdict on separate, distinct offenses. Thus, the jury's failure to reach a verdict on the DWI charge was *not* an implied acquittal of defendant on that charge. The failure of the jury to reach a verdict is not an event that terminates jeopardy, *Richardson,* — U.S. at ——, 104 S.Ct. at 3086. The Double Jeopardy Clause does not bar reprosecution in this case.

Accordingly, the Magistrate's decision to deny the defendant's motion to dismiss is affirmed.