# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 25, 2010 Session

## STATE OF TENNESSEE v. GUSSIE WILLIS VANN

**Interlocutory Appeal from the Circuit Court for McMinn County**
**Nos. 93-687; 93-690; 93-691      Donald P. Harris, Senior Judge**

---

**No. E2009-01721-CCA-R9-CD - Filed March 11, 2011**

---

Pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, the State appeals the trial court's order denying jury instructions on lesser included offenses at the Defendant Gussie Willis Vann's retrial for felony murder. See T.C.A. §39-13-202(a)(2) (1991). The Defendant was originally convicted by a McMinn County jury of felony murder committed in the perpetration of aggravated rape and two counts of incest. He was sentenced to death plus six years' incarceration. In affirming his convictions on direct appeal, this court, see State v. Gussie Willis Vann, No. 03C01-9602-CC-00066, 1997 WL 309320 (Tenn. Crim. App., at Knoxville, June 10, 1997), and the Tennessee Supreme Court, see State v. Vann, 976 S.W.2d 93 (Tenn. 1998), rejected the Defendant's claim that the trial court erred by failing to instruct the jury on the lesser included offenses of felony murder. The Defendant subsequently filed a petition for post-conviction relief, and the post-conviction court ordered a new trial on grounds unrelated to the issue presented in this appeal. Prior to retrial, the Defendant moved to dismiss his indictment and bar instructions on the lesser included offenses of felony murder arguing, among other things, (1) that principles of double jeopardy, collateral estoppel, and judicial estoppel precluded the State from prosecuting the Defendant on any lesser included offense of felony murder because the "explicit statements" of both this court and the Tennessee Supreme Court "on direct appeal that the trial record was 'devoid of evidence' of lesser included offenses were factual determinations, necessary to valid final judgments, from which the government is prohibited from seeking an inconsistent determination" and (2) that "the [original] trial judge's refusal to instruct on such lesser included offenses was a qualitative determination of the evidence, tantamount to an acquittal and triggering traditional double jeopardy and res judicata [as] to those charges." Following a hearing, the trial court agreed in part with the Defendant and actually barred retrial on any lesser included offenses of felony murder. The State sought and we granted Rule 9 review to determine "whether constitutional double jeopardy protections bar at the trial the inclusion of lesser included offenses of first degree felony murder." Upon our review, we reverse the decision of the trial court and remand for proceedings consistent with this opinion.

**Tenn. R. App. P. 9; Judgment of the Circuit Court Reversed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; R. Steven Bebb, District Attorney General; and Jerry Sloan, Assistant District Attorney General, for the Appellant, State of Tennessee.

Benjamin L. McGowan, Chattanooga, Tennessee, for the Appellee, Gussie Willis Vann.

**OPINION**

On July 30, 1992, the Defendant's daughter, the eight-year-old victim in this case, was found in her bedroom with a rope around her neck; she was not breathing. Despite the paramedics' attempts to revive the victim, she was pronounced dead upon her arrival at the hospital. In 1994, the Defendant was tried by a jury, and the pertinent facts, as outlined in State v. Vann are detailed below:

> Dr. Robert L. Martin, the attending emergency room physician, . . . [found that the] victim's panties were removed and [that] a broken gold necklace fell onto the examination table. [The doctor] observed bruises on the victim's neck and a slight tear at the opening of her vagina . . . . Dr. Martin described the victim's anus as extremely dilated, with no muscle tone, indicating multiple episodes of anal penetration over a prolonged period of time . . . . Dr. Martin testified that he did not discover a "hangman's fracture" on the victim's neck, indicating the victim had been strangled rather than hanged.

> Also admitted into evidence was a statement given by the [D]efendant to Tennessee Bureau of Investigation Agent Richard Brogan in which the [D]efendant said that from about 4:30 p.m. on the afternoon of July 30, he, his wife, and their four children (including the victim) had watched videotaped movies on their television. They had eaten popcorn as they watched the movies. Later in the evening the victim had gone into her bedroom. The [D]efendant had gone to a local convenience store and purchased cigarettes and two pieces of "Chico" candy. Upon returning home, he undressed to take a shower and then heard his wife screaming from the other room. He ran into the hallway and saw his wife carrying the victim in her arms. After taking the victim into his arms and determining that she was not breathing, the [D]efendant told his wife to go to a neighbor's house to call 911. The

[D]efendant began performing CPR on the victim. Shortly thereafter, Bernice Vann returned to the residence, along with a neighbor. Bernice Vann obtained a blanket for the [D]efendant since he had not been able to dress before beginning CPR on the victim.

. . . .

Jerry Tate, a criminal investigator with the McMinn County Sheriff's Department, testified that he had been dispatched to the emergency room to investigate the purported suicide of the eight-year-old victim in this case. Upon viewing her body, Tate noticed red marks around her neck, her severely enlarged anus, the tear at the opening of her vagina, and blood near the victim's vaginal opening. As a result of his observations, Tate asked Dr. Martin to obtain rape kit samples from the victim's body. Tate then obtained verbal consent from Bernice Vann and the [D]efendant to visit their home and investigate the victim's death . . . . Approximately two weeks later, . . . Tate obtained a warrant to search the Vann residence. During the ensuing search, a pornographic videotape, various pornographic magazines, unopened packages of condoms, a partially used jar of petroleum jelly, a rope tied into a noose, and the victim's dresser were seized. These items, along with the rape kit samples from the victim, the items seized in the consent search, samples of blood, saliva, pubic hair, head hair, and a penile swab obtained from the [D]efendant's person the morning after the victim's death, and similar samples obtained from Bernice Vann during the two weeks preceding the arrest, were submitted to the Tennessee Bureau of Investigation (T.B.I.) for testing and analysis.

. . . .

Raymond Depriest, a T.B.I. expert in serology, testified that his analysis of a pair of jeans and a t-shirt believed to have been worn by the victim on the day of the murder, a blue and white jumper, the victim's underwear, two packages of condoms taken from the [D]efendant's home, and an anal swab taken from the victim all proved negative for the presence of sperm, saliva, or blood. However, his analysis of sheets taken from the victim's bed revealed the presence of semen stains which were consistent with the blood, saliva, and semen samples taken from the [D]efendant.

. . . .

John Mertens, an F[ederal] B[ureau of] I[nvestigation] agent specializing in DNA analysis[,] testified that the DNA profiles of the semen stains found on the victim's bed sheet matched the DNA profile of the [D]efendant. The odds of finding another individual whose DNA profile matched that of the semen stains found on the sheet are one in ten thousand.

The medical examiner for McMinn County, Dr. William Foree, Jr., testified that he . . . observed blood both in the victim's vaginal and anal areas. He also observed a laceration in the vaginal area, a contusion on her forehead, and abrasions on her lower extremities. He noted signs of asphyxiation, and based upon the angle of depression on the victim's neck, concluded that the cause of death had been strangulation rather than hanging. Due to the markings on the victim's neck, he further concluded that the strangulation had been accomplished from behind the victim.

Dr. Ronald Toolsie, a pathologist at Bradley Medical Center, performed the autopsy and agreed with Dr. Foree that the cause of death had been strangulation. According to Dr. Toolsie, the quarter-inch depression in the victim's neck indicated ligature strangulation consistent with the rope found in the defendant's home. Torn muscles in the victim's neck indicated that considerable force had been applied to strangle the victim. Dr. Toolsie also had found evidence of repeated sexual abuse. Based on his observation of a tear to the victim's vaginal opening and fresh bruising on the inside of her vaginal wall, Dr. Toolsie concluded that the most recent abuse had occurred around the time of death. Dr. Toolsie said the victim's anus had been dilated three or four times larger than normal, indicating she had suffered repeated anal penetration over some period of time . . . . Dr. Toolsie testified that he had found no material resembling popcorn in the victim's stomach.

Vann, 976 S.W.2d at 97-99.

Based on the above proof, the Defendant was convicted of felony murder and two counts of incest. Id. at 99. Following the penalty phase, the jury imposed a sentence of death for felony murder. Id. at 100.

Following his unsuccessful direct appeal, the Defendant petitioned the trial court for post-conviction relief. The post-conviction court granted a new trial based upon its determination that the Defendant had been deprived of the effective assistance of trial counsel. Prior to his retrial, the Defendant moved the trial court to dismiss his indictment for felony murder, to bar the State from retrying him on any of the lesser included offenses of

felony murder, and to preclude jury instructions on the lesser included offenses of felony murder based on the language in the Tennessee Supreme Court's opinion on direct appeal. Following a hearing, the trial court agreed with the Defendant in part. In its written order, the trial court concluded that the rulings of the trial and appellate courts during the Defendant's first trial and direct appeal "amount[ed] to an acquittal of any lesser included offense of felony murder and the [D]efendant cannot be retried for these lesser offenses."[1]

On appeal, the State claims that the trial court erred by "preclud[ing] the trial court from instructing the jury at the retrial on any applicable lesser included offenses" of felony murder. In response, the Defendant contends that his "retrial on any lesser included offense of felony murder implicates and offends [principles of double jeopardy]." In support of his double jeopardy claims, he presents two arguments. First, the Defendant contends that

> this [c]ourt's and the Tennessee Supreme Court's explicit statements on direct appeal that the trial record was 'devoid of evidence' of lesser included offenses were factual determinations, necessary to valid final judgments, from which the government is prohibited from seeking an inconsistent determination under the collateral estoppel extension of double jeopardy jurisprudence.

Secondly, the Defendant claims that "the trial judge's refusal to instruct on such lesser included offenses was a qualitative determination of the evidence, tantamount to an acquittal and triggering traditional double jeopardy and res judicata [as] to those charges."

Our approach to the issues raised in this case will be to first determine the lesser included offenses of felony murder as they existed at the time of the offense. Next, we must separate the Defendant's claim that principles of double jeopardy <u>bar his retrial</u> for any of said lesser included offenses from his claim that the trial court <u>should not instruct the jury</u> on retrial on any lesser included offenses. These are separate issues. Regarding the claim of a double jeopardy bar, we have determined that principles of double jeopardy do not bar retrial on the lesser included offenses. Accordingly, our next task will be to determine whether jury instructions on applicable lesser included offenses are impermissible. This last inquiry includes an examination of the doctrines of res judicata, collateral estoppel, and law

---

[1] Although the court referred to "the ruling of the trial court," it is unclear whether there was a request to the original trial court to instruct the jury on lesser included offenses of felony murder. The State, in its brief, states that neither party at the original trial requested instruction on the lesser included offenses of felony murder. Defense counsel maintained to the trial court during the motion hearing, however, that "there was a request from the defense at [the original] trial that lesser included offenses be charged on felony murder. There was a refusal from the [original trial] [c]ourt to do that."

of the case. Our final conclusion is that instructions at retrial on any applicable lesser included offenses are not precluded by any previous action in the case.

## I. Lesser Included Offenses of Felony Murder

The crime in this case was committed in 1992. At that time, felony murder was defined as a "<u>reckless</u> killing of another committed in the perpetration of, or attempt to perpetrate" an enumerated felony. T.C.A. § 39-13-202(a)(2) (1991) (emphasis added). Thus, the indictment charged that offense as well as all lesser included offenses. See <u>Strader v. State</u>, 362 S.W.2d 224, 227 (Tenn. 1962) ("So now when one is put on trial on a single charge of felony, he is also on trial for all its lesser included offenses, as the facts may be."). The trial judge was constrained to "charge all the law as to each [of the lesser included] offenses" when the evidence, "upon any view the jury may take of it, permit[ted] an inference of guilt as to such lesser included offenses." <u>Id.</u> at 228; <u>see also</u> T.C.A. § 40-18-110(a) (1991).

The only lesser included offenses of felony murder recognized in Tennessee in 1992 were criminally negligent homicide and facilitation of felony murder. See T.C.A. §§ 39-13-212(a) (1991) (defining criminally negligent homicide); 39-11-403 (defining facilitation of a felony). At that time, the prevailing approach to determining lesser included offenses was outlined in <u>Howard v. State</u>, 578 S.W.2d 83 (Tenn. 1979). In <u>Howard</u>, our supreme court reasoned that "an offense is necessarily included in another if the elements of the greater offense, as those elements are set forth in the indictment, include, but are not congruent with, all the elements of the lesser." <u>Howard</u>, 578 S.W.2d at 85. The <u>Howard</u> approach was essentially an elements analysis.

Accordingly, in <u>State v. Gilliam</u>, 901 S.W.2d 385 (Tenn. Crim. App. 1995), this court, utilizing an elements analysis, held that second degree murder, which is and was then a "knowing" killing, <u>see</u> T.C.A. § 39-13-210, was not a lesser included offense of felony murder as it was proscribed at the time of the offense in the present case:

> "Reckless" is a lesser included mental state of "knowing". When acting recklessly establishes an element, that element is also established if the defendant acted knowingly. Conversely, when acting knowingly establishes an element, that element is <u>not</u> established if the defendant acted only recklessly. Therefore, in order to find a defendant guilty of second-degree murder, an element not contained in first-degree felony murder (the mental element of "knowing") must be established.

Gilliam, 901 S.W.2d at 390-91(internal citations omitted). Gilliam also stated, essentially, that voluntary manslaughter was not a lesser included offense of felony murder in 1990, the time of Gilliam's offense. Id. at 391.

Reckless homicide, currently codified in Tennessee Code Annotated section 39-13-215, was not proscribed until 1993, contrary to the notation in Gilliam. See 1993 Tenn. Pub. Acts 306, § 2. But see Gilliam, 901 S.W.2d at 391. Accordingly, reckless homicide was not an offense in 1992 when the offense in the present case was committed. For that reason, it is not a lesser included offense in the present case. We note in passing that the offense of involuntary manslaughter, once codified in Tennessee Code Annotated sections 39-2-221, -222 (1982), was repealed in 1989, before the commission of the offense now before us. 1989 Tenn. Pub. Acts 591, §1.

Pursuant to the felony murder statute in force in 1992, attempt to commit felony murder was not a viable offense. State v. Kimbrough, 924 S.W.2d 888, 892 (Tenn. 1996) ("[T]he offense of attempted felony-murder does not exist in Tennessee.").

In conclusion, we determine that the legal lesser included offenses of felony murder in 1992 were criminally negligent homicide, see Gilliam, 901 S.W.2d at 390-91, and facilitation of felony murder, see State v. Lewis, 919 S.W.2d 62, 67 (Tenn. Crim. App. 1995) (noting that "virtually every time one is charged with a felony by way of criminal responsibility for the conduct of another, facilitation of the felony would be a lesser included offense"), overruled on other grounds by State v. Williams, 977 S.W.2d 101, 108 n.7 (Tenn. 1998).

## II. Application of Principles of Double Jeopardy

The double jeopardy clause of United States Constitution[2] and Article I, Section 10 of the Tennessee Constitution prohibit placing a person in jeopardy twice for the same offense. U.S. Const. amend. V; Tenn. Const. art. I, § 10.

Three fundamental protections are encompassed in the principle of double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense. The policy underlying double jeopardy is that the State, with all of its resources, should not be able to make repeated attempts to convict an individual for an alleged offense,

---

[2]The Double Jeopardy Clause was made applicable to the States through the Due Process Clause of the Fourteenth Amendment in Benton v. Maryland, 395 U.S. 784, 794 (1969).

thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even [when] innocent he may be found guilty.

State v. Thompson, 285 S.W.3d 840, 847-48 (Tenn. 2009) (citations and internal quotation marks omitted). Here, the Defendant contends that the trial court acquitted him at his first trial of any applicable lesser included offenses by failing or refusing to provide jury instructions on these offenses. Consequently, he claims the instant case qualifies as a "second prosecution after acquittal." Therefore, this appeal concerns only the first principle of double jeopardy.

"The Double Jeopardy Clause is not an absolute bar to successive trials." Justices of Boston Mun. Ct. v. Lydon, 466 U.S. 294, 308 (1984). As a general rule, the Double Jeopardy Clause does not preclude "the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." Lockhart v. Nelson, 488 U.S. 33, 38 (1988) (citing United States v. Ball, 163 U.S. 662, 672 (1896) (permitting retrial following reversal of conviction on direct appeal); United States v. Tateo, 377 U.S. 463, 464-66 (1964) (holding retrial permissible when conviction declared invalid on collateral attack)); see State v. Harris, 919 S.W.2d 323, 328 (Tenn. 1996) (recognizing that "no constitutional provision prevents retrial after a reversal for legal error" and discussing the "clean slate rule" in the context of bifurcated capital prosecution and sentencing proceedings); State v. Campbell, 641 S.W.2d 890, 893 (Tenn. 1982) ("[W]here the defendant seeks and obtains the invalidation of the judgment and dismissal is based on technical or procedural grounds, there is no former jeopardy problem in retrial."). Implicit within this general rule "is the concept of 'continuing jeopardy,'" a principle that applies "'where criminal proceedings against an accused have not run their full course.'" Lydon, 466 U.S. at 308 (quoting Price v. Georgia, 398 U.S. 323, 326-29 (1970)). Finally, "the protection of the Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." Richardson v. United States, 468 U.S. 317, 325 (1984) (citing Lydon, 466 U.S. at 308-10; Price, 398 U.S. at 329).

As previously explained, in the Defendant's direct appeal, the Tennessee Supreme Court concluded that the trial court's failure to instruct on lesser included offenses was not error because the record lacked evidence supporting those offenses. After the award of post-conviction relief, the trial court, relying on that conclusion in the direct appeal, precluded jury instructions on lesser included offenses at the Defendant's retrial. Citing the United States Supreme Court's holding in Burks v. United States, 437 U.S. 1 (1978), the Defendant claims that "an appellate court's finding of insufficient evidence to convict on appeal from a judgment of conviction is for double jeopardy purposes, the equivalent of an acquittal" and

contends that the trial court's submission of the case to the jury without instructions on lesser included offenses equated to an implied acquittal of those offenses. The State argues, without addressing Burks, that the Defendant "presented no authority on point in the trial court in order to support his [double jeopardy] argument relative to lesser-included offenses."

In the Defendant's direct appeal, our supreme court said:

> Reviewing the evidence in this record, we agree with the Court of Criminal Appeals that the trial court did not err in failing to give a jury instruction on second degree murder and facilitation of a felony. The evidence in this record establishes that the victim had been killed during the perpetration of a rape, or that the victim had died from an accidental choking on popcorn, or that the victim had committed suicide. The record in this case is devoid of evidence to support a jury charge on the offenses of second degree murder and facilitation of a felony. State v. Boyd, 797 S.W.2d 589, 593 (Tenn. 1990); State v. King, 718 S.W.2d 241, 245 (Tenn. 1986). Therefore, failure to instruct the jury on these offenses was not error.

Vann, 976 S.W.2d at 100-01.

In Burks, the Court held that, if upon appellate review it is determined that there was insufficient evidence to convict, then the defendant must be acquitted, and the Double Jeopardy Clause precludes a second trial. Burks, 437 U.S. at 18; see also State v. Maupin, 859 S.W.2d 313, 316 (Tenn. 1993); State v. Anderson, 985 S.W.2d 9, 17 (Tenn. Crim. App. 1997). The language from Vann relied upon by the Defendant was not speaking, however, to the sufficiency of the convicting evidence. In Vann, the high court was merely applying the rule for determining the factual justification for jury instructions on lesser included offenses. See, e.g., Strader, 362 S.W.2d at 228-29. This judicial undertaking does not lead to an adjudication on the legal sufficiency of the convicting evidence; neither Burks nor any other case we have seen says otherwise. In other words, the ruling on lesser included offenses in Vann does not equate to either an acquittal or conviction of such lesser offenses, and accordingly, no "second" prosecution following an acquittal or conviction of such offenses will occur via retrial; neither will the retrial implicate multiple punishments for the same offense. Hence, principles of double jeopardy do not bar the inclusion of applicable lesser offenses of felony murder.

Integral to this determination, we have concluded that the trial court's failure or refusal to instruct the jury on lesser included offenses did not equate to an acquittal of such offenses. In resolving whether a trial court's action constitutes an acquittal, a reviewing court "must determine whether the ruling of the judge, whatever its label, actually represents

a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged." United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977). Obviously, the Defendant was not expressly acquitted of the lesser included offenses by the jury or the trial court. Therefore, we are left to determine whether the trial court's refusal or failure to instruct on lesser included offenses of felony murder amounted to an implied acquittal of those offenses upon retrial.

As it is traditionally applied, the doctrine of implied acquittal bars retrial under the Double Jeopardy Clause "when the first jury 'was given a full opportunity to return a verdict' on [the greater] charge and instead reached a verdict on the lesser charge." Price, 398 U.S. at 329 (quoting Green v. United States, 355 U.S. 184, 191 (1957)). "Only where the jury is given the full opportunity to return a verdict either on the greater or, alternatively, on the lesser included offense does the doctrine of implied acquittal obtain." United States v. Reed, 617 F. Supp. 792, 800 (D.C. Md. 1985). "If no instructions are given on lesser included offenses, the jury's verdict is limited to whether the defendant committed the crime explicitly charged in the indictment." United States v. Gooday, 714 F.2d 80, 82 (9th Cir. 1983).

We do not view the trial court's failure or refusal to instruct on lesser included offenses as an acquittal by that court as to those offenses for the same reasons we expressed above when concluding that our supreme court did not rule upon the legal sufficiency of the convicting evidence. The issue was the propriety of jury instructions. So far as we can tell, the trial court was neither asked to rule nor did it rule upon a motion of acquittal of lesser included offenses. Furthermore, we see no basis for concluding that the jury acquitted the Defendant of lesser included offenses. Nothing in the record suggests that it did. We note that sequential or "acquittal first" jury instructions are and have been "the prevailing practice" in Tennessee. State v. Hanson, 279 S.W.3d 265, 279 (Tenn. 2009). Under such instructions, the jury would not have deliberated as to lesser included offenses because it convicted the Defendant of the charged offense of felony murder.

### III. Application of Principles of Res Judicata, Collateral Estoppel, and Law of the Case

Having determined that the State is not barred on retrial from pursuing a conviction on any applicable lesser included offenses of felony murder, we now consider whether jury instructions on lesser included offenses are otherwise foreclosed by the previous actions of the courts in the Defendant's case. The nature of this issue implicates the doctrines of res judicata, collateral estoppel, and law of the case.

In Massengill v. Scott, our supreme court summarized the related doctrines of res judicata and collateral estoppel:

-10-

The doctrine of collateral estoppel or estoppel by judgment is an extension of the principle of res judicata, and is generally held to be applicable only when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment

. . . .

Res judicata bars a second suit between the same parties and their privies on the same cause of action as to all issues which were or could have been litigated in the former suit. Collateral estoppel operates to bar a second suit between the same parties and their privies on a different cause of action only as to issues which were actually litigated and determined in the former suit. . . . To sustain a plea of collateral estoppel it must be shown, inter alia, that the issue sought to be concluded not only was litigated in the prior suit but was necessary to the judgment in that suit."

738 S.W.2d 629, 631-32 (Tenn. 1987) (citation omitted). "'Once an issue has been actually or necessarily determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different.'" Gibson v. Trant, 58 S.W.3d 103, 113 (Tenn. 2001) (quoting State ex rel. Cihlar v. Crawford, 39 S.W.3d 172, 178-79 (Tenn. Ct. App. 2000)).

The principle of collateral estoppel, when used defensively by a criminal defendant, see State v. Scarbrough, 181 S.W.3d 650, 659 (Tenn. 2005) (stating that the prosecution may not use collateral estoppel offensively), may have constitutional double jeopardy implications. The Court added that "a defendant in a criminal case may assert collateral estoppel by relying on an acquittal in a first prosecution to bar the litigation of those facts in a later prosecution for a different offense." Id. at 655 (citing Ashe v. Swenson, 397 U.S. 436, 443-47 (1970)). The Court concluded that "a defendant's reliance on the collateral estoppel doctrine in such circumstances 'is embodied in the Fifth Amendment guarantee against double jeopardy.'" Id. (quoting Ashe, 397 U.S. at 445).

In the present case, the Tennessee Supreme Court reviewed the evidence for the purpose of determining whether the trial court erred in failing or refusing to instruct on the lesser offenses. Following the post-conviction court's ordering a new trial, the original lawsuit in this case is still ongoing, with retrial pending. No court adjudicated an insufficiency of evidence for the purpose of foreclosing further proceedings on any charges.

No second suit has been initiated. In the continuing process of this case, the evidence admitted upon retrial may vary from the evidence admitted in the first trial. Generally, the State is "'not limited at a new trial to evidence presented at the first trial[] but is free to strengthen its case in any way it can by the introduction of new evidence.'" Harris, 919 S.W.2d at 328 (quoting Pickens v. State, 730 S.W.2d 230, 235 (Ark. 1987)). Variations could emanate from either the State's proof or that of the Defendant. However unlikely it may be in the present case, a variation in the proof may result in a different view of the necessity of instructing the jury on some lesser included offenses. For these reasons, we hold that principles of res judicata or collateral estoppel do not preclude the use of lesser included offense instructions on retrial. Whether such instructions may be warranted under the applicable rules will depend upon the status of the evidence at the conclusion of that trial.

Next, we have considered whether the law of the case doctrine precludes lesser included offense instructions on retrial. Our supreme court addressed the law of the case doctrine in great detail in Memphis Publ'g Co. v. Tenn. Petrol. Underground Storage Tank Bd.:

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. The doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication. The doctrine does not apply to dicta.
>
> The law of the case doctrine is not a constitutional mandate nor a limitation on the power of a court. Rather, it is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited. This rule promotes the finality and efficiency of the judicial process, avoids indefinite relitigation of the same issue, fosters consistent results in the same litigation, and assures the obedience of lower courts to the decisions of appellate courts.
>
> Therefore, when an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered

after remand. There are limited circumstances which may justify reconsideration of an issue which was issue decided in a prior appeal: (1) the evidence offered at a trial or hearing after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal.

975 S.W.2d 303, 306 (Tenn. 1998) (internal citations omitted).

In the present case, the point of law decided by the supreme court – the propriety or necessity of lesser-included-offense instructions – was based upon the facts placed into evidence in the first trial. As noted above, the law of the case doctrine does not control when, upon retrial, the evidence may vary from that used in the first trial. If, of course, the evidence upon retrial is the same, such that no instructions on lesser included offenses are warranted, the law of the case doctrine would oblige the trial court to refrain from giving the instructions. At this interlocutory juncture, however, the law of the case doctrine does not apply on this point.

### IV. Application of Principle of Equitable Estoppel

In his final issue, the Defendant cites Cracker Barrel Old Country Store, Inc. v. Epperson, 284 S.W.2d 303, 315 (2009), and further asserts the principle of "equitable estoppel" as a bar to the inclusion of the lesser included offenses upon retrial. Here, the Defendant argues that equitable estoppel "should preclude an appeal where the State seeks to argue, on retrial and on interlocutory review, that it may prosecute lesser included offenses of felony murder when, on a prior appeal to the same appellate court, it had successfully argued that the trial court was correct in refusing to instruct on lesser offenses of felony murder because there was insufficient evidence of such lesser offenses." Other than proclaiming that the State has taken a "diametrically opposite position" than in the first appeal, the Defendant does not explain how the elements of equitable estoppel as enunciated in Cracker Barrel Old Country Store, Inc. apply to the instant case.

We have found no authority extending traditional notions of the principle of equitable estoppel to constitutional principles of double jeopardy. See Applying Estoppel Principles in Criminal Cases, 78 YALE L.J. 1046, 1046 n.1 (1969) (describing the "judicial principle that the government cannot be estopped in criminal actions" as "solidly entrenched" and advocating for a "full-blown defense of criminal estoppel"). Therefore, we are inclined to consider this issue beyond the scope of the question presented for interlocutory review. To the extent that courts have recognized this concept in the criminal context, they have relied

-13-

upon other due process grounds including (1) recognizing a defense of entrapment, see Raley v. Ohio, 360 U.S. 423, 426 (1959); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 347 (1963) ("[E]vidence of guilt induced from a person under a governmental promise of immunity . . . must be excluded under the Self-Incrimination Clause of the Fifth Amendment."); (2) barring convictions where defendant relied upon or was misled by official interpretations of the law, see Cox v. Louisiana, 379 U.S. 559, 571 (1965) (holding that due process barred conviction under a statute prohibiting demonstrations "near" a courthouse, when the defendants had relied on town officials' "on-the-spot" interpretations of the statute); and (3) recognizing that the Fourth Amendment exclusionary rules operate as a form of estoppel to uphold constitutional rights that have been infringed by illegal methods of obtaining evidence, see United States v. Davis, 272 F.2d 149, 153 (7th Cir. 1959). We have fully addressed the propriety of the constitutional issues presented for interlocutory review in this case. Nothing in this record supports Defendant's claim that the State is barred by equitable estoppel from proceeding with the prosecution in this case.

## V. Conclusion

We reject the claims of the Defendant that the State upon retrial is barred from seeking convictions on the lesser included offenses of criminally negligent homicide and facilitation of felony murder. We also reject the Defendant's claims that the trial court upon retrial is precluded from instructing the jury on applicable lesser included offenses. Accordingly, we reverse the order of the trial court and remand the case for retrial.

_____
CAMILLE R. MCMULLEN, JUDGE